## CHARLES F. PALMER,

*vs*

## PENOBSCOT LUMBERING ASSOCIATION.

### Penobscot.    Opinion April 15, 1897.

*Negligence.    Logs.    Damages.    Evidence.*

A jury found that the plaintiff sustained damages in the sum of $2899.02 by reason of the defendant's failure to exercise reasonable diligence in rafting and delivering his logs in the spring and summer of 1893. *Held;* that it was the duty of the defendant corporation to exercise that care, diligence and foresight which persons of reasonable and ordinary prudence, capacity and discretion usually exercise under like circumstances, having due regard to the rights and interests of all persons likely to be affected by their acts.

Actual notice of the existing conditions, given by the letter of a director to the president of the company, is obviously a relevant fact and one of the tests of diligence; and therefore admissible in evidence.

The difference between the "real market prices" at the time the plaintiff actually received his logs and the time when he should have received them is the measure of damages which the plaintiff is entitled to recover. The rule is based on the principle of just compensation, and is designed to give the aggrieved party an exact equivalent for the damages sustained. *Held;* in this case, that the rights of the defendant were carefully guarded by adequate instructions respecting any temporary or special prices which might be occasioned by the sale of small lots or other peculiar circumstances.

Where there is no indication of prejudice or misapprehension on the part of the jury, and no valid reason is apparent for disturbing the verdict, it will not be set aside.

ON MOTION AND EXCEPTIONS BY DEFENDANTS.

This was an action to recover damages for negligence in the management of the plaintiff's logs which came into the Penobscot Boom in the spring of 1893.

The plaintiff in his writ set out four separate claims, in substance, as follows:

First,—That the defendant company neglected to have its booms in proper condition and neglected to care for his logs so that the logs escaped, went down the river and were lost; he claims the loss of about 460,000 feet of logs of value of about $4,000.

Second,—That by reason of such negligence about 72,000 feet escaped, and he was put to the expense of $400 in picking them up and securing them.

Third,—That the defendant wrongfully rafted the plaintiff's logs with logs of other persons, and plaintiff was put to the expense of $264 in separating his logs from logs of other persons.

Fourth,—That the defendant did not seasonably raft the plaintiff's logs out of the booms, especially those which came into the boom in the early part of the season and he suffered great loss, to wit: $10,000, there having been a falling off in the price of logs from the early season's price to the prices of the later part of the season and the next year.

The presiding judge instructed the jury to render special findings on each of these claims—and they returned a verdict of $2899.02—as the damages from defendant's negligence in the rafting of logs as set out in the last claim of plaintiff's writ.

Upon the question of damages the presiding justice instructed the jury as follows: "It is claimed on the part of the plaintiff that there has been evidence sufficient to satisfy you that up to July 6th a fair market price for logs of that character was $11.50 to $11.75, varying a little. But the defense says that this was a special price by reason of special and peculiar circumstances; that it was because of the fact that only a few logs were coming and many logs were wanted, but that if the great mass of the logs had been turned out suddenly or with great rapidity at that time, the price would have dropped; that it was a temporary price affected by peculiar and temporary reasons, and was not the market price on which you should base your computations. If it is true, gentlemen, that that was only a special price by reason of the peculiar situation at that particular time, although the plaintiff might have sold a large quantity of his logs if he could have had them all at that time,—still he was not entitled to his logs any faster than anybody else was entitled to their logs, without partiality, taking them as they came, driving them to the gap, through the gap, and rafting them. So then, if you come to this

question of damages, it is for you to say how much was this special price of $11.50 to $11.75 prior to July 6th affected,— because, so far as it was affected, you should consider it in your computations.

"Now, next, did the market drop then, and, if so, how much? You see it is a matter requiring the carefullest consideration and computation to get an accurate result. How much did the market drop? How long was this plaintiff delayed longer than he should have been? You appreciate, of course, that if there had been but one mark of logs on the river, and this of course had been Mr. Palmer's or anybody's else, that person could have gotten them there so fast as the river would have brought them, and there would have been no conflict between him and anybody else; but inasmuch as numerous others had numerous marks of logs in the river, they were all entitled to equal and concurrent rights, and each must give way to the other so that they could all exercise them to the extent possible under the circumstances.

"[Well, gentlemen, I give you this general rule, that if by reason of the neglect of this corporation to exercise reasonable diligence, in view of the whole situation, in obtaining, rafting and delivering logs, this plaintiff's logs were unreasonably delayed, and that during the period of that unreasonable delay there was a drop in the real market price so that between the time when Mr. Palmer ought to have had his logs and the time when he did have them, there was a drop of one cent, or one dollar, or two dollars a thousand, in the difference between the real market price at the time when he should have had them and when he did have them,—that difference would be the measure of damages that he would be entitled to in that respect, upon such logs as he should have had but did not have. That is all there is to it.]"

To so much of the foregoing charge as is embraced in brackets the defendant took exceptions.

The defendant also took exceptions to the admission of the following letter written by one of the directors of the defendant company to its president:

"Bangor, Me., May 25, 1893.

"John Cassidy, Esq.    Dear Sir:

"I am continually being importuned by different interests, log owners as well as manufacturers; it seems to be the universal opinion that the logs were never rafted so slowly at the boom before, and that the only way out of it is to hoist Nebraska, advertise for men, and get men there. I tell them as you do, that it would be of no use, that the class of men who do that kind of work are satisfied with their wages, and that a proffered advance would bring out no more than the present scale of prices, but am told that this may all be true, but that an advance has brought an influx of laborers far in excess of the demand, and men had to be sent away who applied for work at this advance.

"At the same time this is a serious matter, Mr. Cassidy, for the interests on the river, the way the rafting is being conducted, and I herewith, Mr. President, hand in my resignation as director, as I am tired and sick of being talked to by so many people.

Yours very truly,

F. W. AYER."

*P. H. Gillin and C. J. Hutchings*, for plaintiff.
Evidence:   1 Greenl. Ev. 14th Ed. § 108.
*C. P. Stetson*, for defendant.

SITTING: WALTON, EMERY, HASKELL, WHITEHOUSE, STROUT, JJ.

WHITEHOUSE, J.   In this case the jury returned special findings that the defendant corporation failed to exercise reasonable diligence in rafting and delivering the plaintiff's logs in the spring and summer of 1893, and that by reason of the defendant's negligence in that respect, the plaintiff sustained damages in the sum of $2899.02. The case comes to this court on exceptions and a motion to set aside the verdict as against evidence.

In the first place, the defendant excepts to the ruling of the presiding justice admitting in evidence the letter of F. W. Ayer, one of the directors of the defendant corporation, to John Cassidy, its

president, dated May 25, 1893, in which it was declared "to be the universal opinion that the logs were never rafted so slowly at the boom before, and that the only way out of , it is to hoist Nebraska, advertise for men, and get men there." The case shows that the letter was admitted "for the purpose of showing notice to the president of the corporation and so stated at the time."

The ruling was undoubtedly correct. The letter was clearly admissible for the purpose stated. It was incumbent on the plaintiff to prove that, under the circumstances and conditions existing during the period in question, the defendant corporation did not exercise that care, diligence and foresight which persons of reasonable and ordinary prudence, capacity and discretion usually exercise under like circumstances, having due regard to the rights and interests of all persons likely to be affected by their acts;—to show that the defendant either performed some act which ordinarily careful and prudent persons in the same relation would not have done, or omitted some duty which ordinarily prudent and careful persons would have performed under the same circumstances and conditions. The care and diligence must vary according to the exigencies which require vigilance and attention and conform in amount and degree to the particular circumstances under which they are to be exerted. *Topsham* v. *Lisbon*, 65 Maine, 455. Ordinary care or due diligence is a relative term, and the question must be determined with reference to the peculiar conditions existing in each case, and the degree of knowledge which the defendant has of these conditions. Actual notice from one of the directors of the corporation was obviously a relevant fact and one of the tests of diligence in the case at bar.

Exceptions were also taken to the following instruction to the jury upon the question of damages: "If by reason of neglect of this corporation to exercise reasonable diligence in view of the whole situation in obtaining, rafting and delivering logs, this plaintiff's logs were unreasonably delayed and that during that period of unreasonable delay there was a drop in the real market price so that between the time when Mr. Palmer ought to have had his logs and the time when he did have them, there was a drop of one

cent, or one dollar or two dollars in the difference between the real market prices at the time when he should have had them, that difference would be the measure of damages that he would be entitled to in that respect upon such logs as he should have had but did not have.    That is all there is to it."    And such is the opinion of the court.    The rule is based on the principle of just compensation.    It is designed and adapted to give the aggrieved party an exact equivalent for the damages sustained. · It is the rule established by the previous decisions of this court in similar cases.    *Weston* v. *Grand Trunk Railway Co.*, 54 Maine, 376; *Grindle* v. *Eastern Express Co.*, 67 Maine, 322; see also *Cutting* v. *G. T. Railway Co.*, 13 Allen, 386; *Ingledew* v. *Northern Railroad*, 7 Gray, 88; *Smith* v. *New Haven & N. R. R. Co.*, 12 Allen, 531.

The term " market value " or " market price " is not limited to the price which an article might realize at a forced sale.    It means the fair value of the property as between one who desires to purchase and one who desires to sell.    It is not what could be obtained for it under peculiar circumstances, when by reason of the necessities of another more than a fair price could be realized.    *Chase* v. *Portland*, 86 Maine, 367, and cases cited.    As stated in the rule given, it is the " real market price " and not the speculative value. The objection made by the learned counsel for the defendant, that the rule in question is " too broad," because in the spring of 1893 the high price paid was only for small lots of logs purchased for a temporary supply, does not affect the soundness of the rule to which the exceptions were taken; and it appears from another part of the charge of the presiding justice that the rights of the defendant were carefully guarded by adequate instructions respecting any "special or temporary price which might be occasioned by such special and peculiar circumstances " as those suggested by the counsel for the defendant.    The amount of the verdict sufficiently indicates that the jury were not misled by the subsequent statement of the general rule.

After a careful scrutiny of the evidence reported, bearing upon the question of the defendant's liability, it is the opinion of the

court that the motion to set aside the verdict as against evidence must also be overruled. The issue of fact involved in this special finding was not intricate or difficult to be understood. A plain business proposition was presented to the jury in a charge that was full, clear and discriminating, and they could hardly fail to apprehend the true relation of the facts to the issue. There is no indication of prejudice, misapprehension or mistake on their part, and no valid reason is apparent for disturbing the verdict.

*Exceptions and motion overruled.*