STATE ex rel. CLARK et al., Respondents, v. PAR-SONS et al., Appellants.

### St. Louis Court of Appeals, January 24, 1905.

1. **ATTACHMENT: Action on Bond: Breaches Assigned.** The petition in an action on an attachment bond alleged that the plaintiff in the attachment, the principal obligor, "did not prosecute the attachment with effect." His defeat on the plea in abatement was a breach of that condition and the petition was good enough to support a verdict.

2. ———: ———: **Measure of Damages: Value at Retail.** In an action on an attachment bond, where the plaintiff's goods had been wrongfully attached and sold, the measure of plaintiff's damages for the loss of the goods was not their market value at retail and instructions to that effect were erroneous.

3. ———: ———: ———: **Wholesale Price.** His true measure of damages was the market value of the goods to be ascertained by what it would cost to replace the merchandise in the store, that is, the wholesale price plus the cost of carriage, provided the goods were new.

4. ———: ———: ———: **Old Goods.** But if the goods were secondhand and depreciated, their condition should be taken into consideration and their actual value ascertained.

5. ———: ———: ———: **Forced Sale.** The measure of the value of the goods will not be determined by what they brought at forced sale by the sheriff.

6. ———: ———: ———: **Attorneys' Fees.** The plaintiff is entitled to recover in such an action the reasonable amount paid out for attorneys' fees in defending the attachment, both in the circuit court and appellate court, but is not entitled to recover for services rendered by the attorneys in a trial on the merits of the case.

7. ———: ———: **Irrelevant Evidence.** In an action on an attachment bond, it was improper to admit in evidence the opinion of the appellate court in the action in which the bond was given.

Appeal from Knox Circuit Court.—*Hon. Edwin R. McKee*, Judge.

REVERSED AND REMANDED.

*O. D. Jones* and *D. A. Rouner* for appellants.

(1) No breaches of the conditions of the bond are sufficiently assigned; the only ones attempted are (1) Failure to prosecute attachment with effect. (2) To pay damages and costs to the defendants. The petition shows the property was sold at judicial sale in vacation; no intimation that it was not fair, or that it did not sell for all it would fairly bring on the market. The statute declares (section 382, R. S. 1899) "When property shall be actually seized which is likely to perish or depreciate in value before the probable termination of the suit the court may order the same to be sold by the officer." The sale is thus made to arrest the depreciation of the property. If not for that purpose, what is it made for? As well sue for the part of it that perished after the sale, as the depreciation of it after the sale. State v. Smith, 31 Mo. 566; State v. Gage, 52 Mo. App. 464. And that in the eye of the law with six per cent interest is full reparation. Baker v. Railroad, 52 Mo. App. 602. Hence an instruction that "The measure of damages was the value of the goods levied upon at the time of the levy in the retail market," was reversible error. The measure is "the value of the property taken with interest from the time of taking down to the trial." (2) The order of sale by the court put the property up at auction to sell for its market value. "Market value is a price established by public sales in the way of ordinary business." 14 Am. and Eng. Ency. Law (1 Ed.), p. 467; Murray v. Stanton, 99 Mass. 348; Meixll v. Kirkpatrick, 6 Pac. 241. "The market value is as near and perhaps the closest approximation to the true value." Dwight v. Co. Coms. 128 Ill. 188; Cravens v. Hunter, 87 Mo. App. 456; Franke v. Davis, 50 Mo. App. 579. (3) The measure of damages as laid down in instruction numbered 2 is "the market value of merchandise goods and fix-

tures'' attached and six per cent interest on it from date of attachment to December 8, 1902, then deduct $2,350 not $2,427 admitted paid and add to it and interest at same rate to trial. Instruction numbered 3 is clearly erroneous in defining market value to mean "the value of goods when sold in the ordinary way of business for cash in the city of Edina." The ordinary way of selling goods in towns of that size is by retail, as every one knows; the instruction in effect so tells the jury. This is plain error. State v. Smith, 52 Mo. App. 464; Baker v. Railroad, 52 Mo. App. 602.

*Campbell & Ellison, G. R. Balthrope,* and *C. D. Stewart* for respondents.

(1) The petition alleges the value of the property attached and sets out the bond *in haec verba*, and states the amount and causes of the damages and alleges the breaches of the bond and asks for judgment for the damages. This is all that is required. State ex rel. Pace, 34 Mo. App. 458; Killey v. Bucamp, 59 Mo. 179; State v. McHale, 16 Mo. App. 483. (2) Instruction numbered 2 fixes the value at the "market value" with six per cent interest from day of seizure. State ex rel. v. Gage, 52 Mo. App. 472; State to use Hayden v. Smith, 31 Mo. 566; State ex rel. v. Ryley, 76 Mo. App. 412; State ex rel. v. Goodhue, 74 Mo. App. 162. (3) Where damages assessed are excessive but the amount is reduced by remittitur to a sum satisfactory to the trial judge, the appellate courts will not interfere. Ice Co. v. Tamm, 90 Mo. App. 189; Link v. Prufrock, 85 Mo. App. 618; Loyd v. Railroad, 53 Mo. 509; Warder v. Henry, 117 Mo. 530, 23 S. W. 776. Nor will an appellate court reverse because trial courts directed remittitur. Holmes v. Railroad, 48 Mo. App. 79.

GOODE, J.—This is an action on an attachment bond by the appellants. On March 3, 1899, Fred B. Parsons instituted an action of attachment against

John L. and Felix Clark in the circuit court of Knox county, and H. R. and E. O. Parsons were his sureties on the bond given in the proceeding, which was in the penal sum of $8,500 of the ordinary form and conditioned as follows: "Now, therefore, if said plaintiff shall prosecute said action without delay and with effect, refund all sums of money that may be adjudged to be refunded to the defendants or found to have been received by plaintiff and not justly due him, and pay all damages and costs that may accrue to any defendant, garnishee or interpleader by reason of any process or proceeding in the suit, or by reason of judgment or process thereon, and pay all damages and costs that may accrue to any sheriff or other officer, by reason of acting under the writ of attachment following the instruction of plaintiff, then this obligation is to be void; otherwise to remain in full force." Judgment went for the Clarks in the attachment action in the circuit court, both on the plea in abatement and on the merits, and that judgment was affirmed by this court. [Parsons v. Clark & Co., 98 Mo. App. 28.] Subsequently the Clarks (defendants in the attachment action, relators in this one) instituted the present action on the bond. Under the writ of attachment a stock of merchandise owned by them had been seized and sold at sheriff's sale, realizing $2,350. In the present action the relators laid their damages by reason of the seizure and sale of the merchandise at the sum of $6,235.97, with interest thereon at the rate of six per cent from March 3, 1899, when the attachment writ was levied. Damages were also claimed for attorneys' fees in the sum of $800, and for further expense incurred in the defense of said suit in the sum of $125. After the final decision of the attachment case the proceeds of the sale of the merchandise were turned over to the relators, which, being deducted from the damages they alleged, left a balance of $6,137.06, for which they prayed judgment.

The answer denied that relators were entitled to judgment in any sum except a reasonable attorney's fee, stated to have been tendered prior to the institution of the suit.

The main contention between the parties was as to the value of the merchandise which was attached and sold; and on this subject the testimony varied widely. There is also a dispute as to the amount of the attorney's fee the relators ought to recover, the defendants asserting there should be no more than $250 allowed for this item; whereas the relators claimed $800. The position of the defendants in regard to the attorney's fee is that no fee paid by the relators can be recovered in the present action on the bond, except what reasonably was earned by the attorneys on the trial of the plea in abatement in the circuit court and not an amount to cover services in the trial on the merits or on the hearing of the appeal from the judgment on the plea in abatement.

A point is made against the sufficiency of the petition in assigning specific breaches of the bond. The breach assigned is that Parsons, the principal obligor, did not prosecute the attachment action with effect. His defeat on the plea in abatement was a clear breach of the condition of the bond and is the one specified. The petition might have been more carefully drawn, but it is good enough to support a verdict; no motion having been made for an order that it be made more definite.

In an instruction given in regard to the ascertainment of the damages sustained by the Clarks by reason of the wrongful attachment, seizure and sale of the stock of merchandise and fixtures, the court told the jury they should find from the evidence the market value of the merchandise on the date it was seized and add thereto the interest at six per cent from that date to December 8, 1902, when the stock was sold, deducting from the amount the sum of $2,350, which the stock

sold for and which was paid to the Clarks, and allow interest on the remainder at six per cent to the date of the verdict. In another instruction the court defined the phrase "market value" as used in the instructions to mean the value of the property "when sold in the way of ordinary business for cash in the city of Edina." The latter instruction is complained of as erroneous. It is said to have had the effect of requiring the jury to measure the value of the merchandise by what it could be sold for at retail in Edina. Indeed, it is conceded that the customary mode of disposing of merchandise in that town is at retail, and some of the witnesses whose testimony concerning the value of the stock was received in behalf of the Clarks, said they estimated its value with reference to what it would bring when sold in that manner. The language of the instruction was that "market value" meant what the goods would yield "when sold in the way of ordinary business for cash in the city of Edina." The court did not advise explicitly that their market value meant retail value; but the instruction, taken in connection with the evidence, must have given the jury that impression. The instruction either meant to identify market value with retail value or was ambiguous as to what was intended by the words "sold in the way of ordinary business," and left in doubt whether this signified vending the merchandise at retail or in bulk. This case is one in which the defendants' plight is bad. They must be subjected to a heavy loss at best, and should not be exposed to an increase of the damages they will have to pay by an erroneous or uncertain charge regarding the measurement of damages. In such litigation the law aims to indemnify the sufferer from the wrongful levy and seizure; to make good his loss. Unless a malicious motive induced the attachment, or there were circumstances of oppression, the damages are confined to reimbursement for the loss. Now the prices merchandise brings at retail are fixed not only by the cost to the

merchant, but with reference to a fair profit above cost and the expense of selling; clerk hire, store rent and other expenditures. To permit a plaintiff in an action like this to recover what the merchandise would bring when retailed, would be to give him more than compensation for his loss; for he would get at once the probable proceeds of the stock, including a profit, without having incurred the expense of selling. That this is not the right measure of damages was declared in a similar controversy. [State to use Hayden v. Smith, 31 Mo. 566.] There are many things whose value can be ascertained by what they bring when sold in the "ordinary way of business;" such as standard corporate stocks, horses, cattle, wheat, land and all things having but one market value whether sold in large or small quantities, and not both a wholesale and a retail value. So there are articles whose market value to a party injured by a tortious conversion is what they would bring when sold in the ordinary way at wholesale; as new merchandise. The market value of a stock of goods wrongly taken from its owner, is to be ascertained, in a suit to compensate him in damages, by what it would cost to replace the merchandise in his store—that is, the wholesale price plus the cost of carriage from the jobbing market to the place of seizure. As the merchant usually can be made whole, there being no circumstances of aggravation, by replacing the goods at their wholesale price with the freight added, this would be the correct method of measuring the damages caused by the tortious caption of a new and seasonable stock. In a case identical with this one, the point in hand was dealt with by the New York Court of Appeals. [Whehle v. Haviland, 69 N. Y. 448.] What we have said is in harmony with that decision, wherein the rule was thus stated: "The plaintiff was entitled to recover so much as would repair the injury sustained by the wrongdoing of the defendants, and that was the money value of the goods at the time and interest there-

on. The money value is the price at which they could
be replaced for money in the market, and hence the in-
quiry is as to the market value of the goods, when they
have a market value," citing Dana v. Fielder, 2 Kern,
441. A large part, if not all, of the merchandise at-
tached by Parsons was old and more or less shelf-
worn; or there was testimony to that effect. It may
have depreciated in value below the wholesale price
of similar goods at the time of the attachment, as
the defendants contended. It does not appear that
such stocks had any uniform market value in Edina,
or were accustomed to be sold there. The fact for the
jury to find was the actual value of the merchandise
seized, when and where it was seized; and this fact was
to be found from any evidence tending to throw light on
its value; such as the current wholesale prices of sim-
ilar commodities, the cost of transportation from the
market and the condition of the stock when seized in
respect to being fresh and seasonable, or old, shopworn,
out of season and consequently run down in value. Men
familiar with the subject and competent as experts can
testify as to the worth of the stock considering its con-
dition. If the goods had been new when attached, then
their market value as determined by what they could be
laid down in relator's store for, would be an accurate
test of their value. But if second-hand and depreci-
ated, the jobbing price of similar new goods could be
only a relevant circumstance. The approved measure
of damages for the wrongful attachment or conversion
of personal property is the value of the property
when taken. [State v. Smith, supra; Walker v.
Boland, 21 Mo. 289; Spencer v. Vance, 57 Mo. 427;
Watson v. Harmon, 85 Mo. 443; State ex rel. v. Gage,
52 Mo. App. 464; State ex rel. v. Riley, 76 Mo. App.
412, 416; Simpson v. Alexander, 35 Kas. 225; 2 Joyce,
Damages, sec. 1085 and citations in note.] The expres-
sion "market value" is often used in opinions and in-
structions as synonymous with the actual or money

value; and so, in a sense, it is. [Spencer v. Vance, supra.] But all articles of personal property do not have an established market value fixed by current sales of such property in the ordinary way of business, so that the price currently realized can be looked to in ascertainment of the actual value; though, as said above, many kinds of property do have such a price from being much dealt in. In Gray v. Railroad, 157 N. Y. 483, it was decided that a second-hand ferry boat had no established market value, and in Sloan v. Baird, 162 N. Y. 327, that a parcel of land with a factory on it containing deteriorated machinery, which composed the principal worth of the plant, had no such established value. In the latter case the court said: "The market value of property is established when other property of the same kind has been the subject of purchase or sale to so great an extent, and in so many instances, that the value becomes fixed." In the present case the effect of the court's direction, coupled with the evidence, was to authorize the jury to ascertain the value of the goods attached by what they would yield when sold at retail; a clear error. And only the worth of the goods which were not deteriorated and out of date could be fixed exclusively by the cost of replacing them at wholesale prices plus the cost of carriage. As to the deterioriated and unseasonable part of the stock, if such there was, its condition was to be taken into account. Therefore the instruction defining "market value" was misleading and improper under the facts of the case.

We are far from agreeing with the defendant's counsel that the measure of the value of the goods and the damages to be awarded for the attachment of them is what they brought at the forced sale by the sheriff. It needs no citation of authorities to refute this contention. Various circumstances, such as the absence of bidders for cash, or the inclemency of the weather when the sale occurred, may have caused them to

bring much less than they were really worth. Sales of this kind lack the element of waiting for a fair price and notoriously result in the sacrifice of property. [Railway v. Woodruff, 55 S. W. 792.] There is no question that the plaintiff's recovery can not be confined to the amount realized at the forced sale. [Horine v. Bone, 69 Mo. App. 481; Spencer v. Vance, supra.]

The Clarks were entitled to recover the reasonable amount paid out for attorneys' fees in defending the attachment or the plea in abatement, both in the circuit court and the appellate court. [State v. McHale, 16 Mo. App. 478.] They were not entitled to recover for the services rendered by the attorneys on the merits of the case after the dissolution of the attachment; which resulted on the trial of the plea in abatement. [State to use v. Fargo, 151 Mo. 280, 52 S. W. 199.] The court properly limited the jury, in awarding damages for attorneys' fees, to reasonable compensation for the services rendered by the attorneys in connection with the attachment proper, and the defendants have no ground to complain on this score.

The opinion of this court rendered when the attachment suit was here on appeal was irrelevant and should not have been read to the jury. Remarks in it may have produced an impression harmful to the defendants. The answer in the present case confessed Parson's failure to successfully prosecute and maintain his attachment and we see no proper purpose that could have been served by reading to the jury the opinion of this court.

No error has been assigned here on account of the unqualified instruction of the court to the jury to allow interest on the value of the goods, and we refrain from a decision as to whether the giving of interest should have been left to the discretion of the jury.

The judgment is reversed and the cause remanded. All concur.