## SOUTHERN ILLINOIS AND MISSOURI BRIDGE COMPANY v. STONE et al., Appellants.

**In Banc, February 26, 1906.**

1. **CONDEMNATION: Public Use: Former Appeal.** Where it was determined by this court on a former appeal in the same case that the use to which it was sought to appropriate the land was a public use, that point is *res adjudicata* on the second appeal. And if it was there determined that the petition was not fatally defective in its allegations concerning public use, that point is no longer open for consideration.

2. **FORMER APPEAL: Res Adjudicata.** Where on former appeal the judgment was reversed and the cause remanded with specific directions, all matters included therein are *res adjudicata* and cannot be reopened on the second appeal.

3. ———: **Condemnation: Direction to Appoint Commissioners.** Where this court by its mandate directs "the court" to appoint commissioners to assess the value of the land in condemnation, that direction is substantially complied with by the appointment of such commissioners by "the judge in vacation."

4. ———: ———: **Appointment of Commissioners: Trial by Jury.** Whether the commissioners should have been appointed by the court or by the judge in vacation is of no consequence, if the landowners filed exceptions to the commissioners's report, and thereupon were awarded a trial by jury, and judgment was entered upon their verdict, and that is the judgment appealed from.

5. **CONDEMNATION: Evidence: Report of Commissioners: No Objection.** Where defendants made no objection to the offering by plaintiff in the trial before the jury, of the report of the commissioners showing that they had assessed the damage at a certain sum, but their objection went no further than to the order of the court appointing commissioners, they cannot on appeal be heard to complain that the court erred in permitting that report to be offered in evidence.

6. ————: **Agreement With Landowner: How Shown.** The avei-ment in condemnation that the plaintiff had endeavored to agree with the landowner, etc., may be sustained by the facts and circumstances of the case.

7. ————: **Benefits.** The benefits peculiar to that portion of the property not taken, and not common to the public at large, may be set off against the damages assessed for the appropria-tion of the property.

8. **BRIDGE: Completion: Presumption.** The presumption will be indulged that a bridge authorized by Congress was completed within the three years within which Congress directed that it should be completed.

9. **FORMER DECISION: Second Appeal: Appellate Practice.** This court will correct or render harmless any error in its former opinion in the same case, but it will do so only when it be-comes satisfied that error was committed.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*Giboney Houck, Jno. A. Hope, M. R. Smith* and *Shepard Barclay* for appellants.

(1) Plaintiff's petition does not state a cause of ac-tion for condemnation because, in the first place, it fails to show compliance with the Federal laws authorizing the construction of said bridge. The Federal act, of which all the courts take judicial notice, as the supreme law of the land (U. S. Const., art. 6, sec. 2), prescribes a number of preliminary steps essential to the construc-tion of the bridge. The petition should show compliance with every essential condition, which it fails to do, for instance, with the absolutely vital condition that the bridge construction be begun within one year. There is no such allegation, and the proof is exactly to the con-trary. (2) The petition of plaintiff does not state a cause of action because it omits the vital and essential allega-tion that the property of the defendants sought to be ac-quired is to be taken "for public use." That omis-

sion is fatal to the proceeding. That is a jurisdictional
and essential averment, wanting in this case. N. Y.
Cent. Case, 5 Hun 86; Colville v. Judy, 73 Mo. 651;
Railroad v. Galt, 133 Ill. 657; Evergreen Assn. v.
Beecher, 53 Conn. 551; Const. Mo., art. 2, sec. 20; Ceme-
tery Assn. v. Redd, 33 W. Va. 262. (3) The learned
judge of the Dunklin Circuit Court had no authority to
appoint commissioners in vacation, in view of the man-
date of the Supreme Court in this case, which directed
the circuit court to act. Said order did not give author-
ity to a judge in vacation to proceed in the matter in
question. Authority of a court does not authorize the
action of a judge in vacation without express authority
in the taking of private property against the owners'
protest. Consent does not waive such a want of jurisdic-
tion. Oliver v. Snider, 176 Mo. 63; Blair v. Reading,
99 Ill. 600. (4) The trial court erred in permitting (by
the sixth instruction given for plaintiff) a reduction of
the compensation to defendants for the taking of their
land by "benefits," supposed to be conferred on "the
remainder of defendants' property" by the bridge ap-
proaches. That instruction is a direct invasion of de-
fendants' rights under the Federal and State Constitu-
tions regarding the taking of private property for pub-
lic use. (5) The instructions given for plaintiff are
erroneous in stating the measure of recovery to which
defendants were entitled under the Constitution and
laws of the United States and Missouri. (6) There
was no proof of a failure to agree as to compensation
to the Finleys, defendants. That failure was a jurisdic-
tional prerequisite to condemnation. (7) The trial
court should have allowed the Cape Girardeau and
Thebes Terminal Railroad to be made a party defend-
ant, as it showed, by undisputed facts, that it had a sub-
stantial interest in the land, the subject-matter of this
suit for condemnation. (8) The trial court erred in
admitting in evidence, at the last trial, the order ap-

pointing commissioners and the report of the commissioners assessing damages for the taking of the land of defendants, because said matters did not "tend to prove any issues in this case," were incompetent and irrelevant. The report of the commissioners (which assessed the value of the land sought to be condemned at $8,120.00), was an item of evidence for the plaintiff which was highly prejudicial in character, totally incompetent, and not defensible on any theory we know of.

*S. H. West* and *W. H. Miller* for respondent; *Alex. G. Cochran* of counsel.

(1) At the very threshold respondent invokes the doctrine of *stare decisis, et non quieta movere,* "Stand by precedents and not disturb what is settled." "Once a point of law is finally settled by a decision, that decision rules like cases subsequently arising." "When a court has once laid down a principle of law applicable to a certain state of facts, for the sake of the stability and certainty of the law it will apply that principle to all future cases where the facts are substantially the same." Moore v. Albany, 96 N. Y. 410. "Stability and certainty in the law are of the first importance. The certainty of a rule is often of more importance than the reason given." Forwarding Co. v. Mahaffey, 36 Kan. 157. The above is especially true where the law has been settled as a rule of property and titles have been acquired on the strength thereof. Reed v. Owenby, 44 Mo. 206; Hine v. Courtes, 44 Mo. 206; Dunklin county v. Chouteau, 120 Mo. 593; Wilson v. Beckwith, 140 Mo. 301; State v. Thayer, 158 Mo. 58; City of Sedalia v. Gold, 91 Mo. App. 38; Sappington v. Oeschli, 49 Mo. 244; Bank v. Douglas County, 146 Mo. 42; Potter v. McDowell, 43 Mo. 93. (2) Respondent asserts now that in the absence even of a specific direction the law as laid down by the majority opinion in the case is the law that will govern this court in passing upon this appeal.

Poulsen v. Portland, 21 L. R. A. 677; Corey v. West, 165 Mo. 452; Lawson v. Spencer, 90 Mo. App. 514; Overall v. Ellis, 38 Mo. 209; Bank v. Taylor, 62 Mo. 338; Keith v. Keith, 97 Mo. 225; Chapman v. Railroad, 146 Mo. 481; Fink v. Ins. Co., 66 Mo. App. 531; Dillon v. Railroad, 71 Mo. App. 631; State ex rel. v. Edwards, 144 Mo. 670; Tourville v. Railroad, 148 Mo. 623; Riley v. Sherwood, 155 Mo. 37. (3) There is no conflict between the instructions given on behalf of plaintiff and on behalf of defendant in this case. Instructions numbered 3, 4, 5 and 6 given at the request of plaintiff have met the direct approval of the Supreme Court of this State. Railroad v. Stock Yards, 120 Mo. 541; Railroad v. Knapp, Stout & Co., 160 Mo. 396. All of these instructions are literal copies of those approved in the Stock Yards case, supra. Instruction numbered 5 was again copied in case of Railroad v. Knapp, Stout & Co., supra, and there again met with distinct approval. Instruction numbered 1, asked on behalf of the objectors, is the same as instruction number 4, asked by plaintiff. In this case the trial court was most liberal, indeed, in its rulings upon the testimony offered by the objectors.

BURGESS, J.—This case was before this court on a former appeal, 174 Mo. 1, wherein a full and fair statement of the facts in the case, as disclosed by the record, was given. The case was then before us on plaintiff's appeal. The judgment of the court below was reversed and the cause remanded, with directions to the court to appoint a commission, as the law required, for the purpose of assessing the damages to the defendant, the said commission to forthwith report its finding to the circuit court in which the proceeding was pending, to the end that the bridge company might take possession of the property and proceed with its work. This commission, acting in accordance with the directions of the court, viewed the property sought to be condemned, and on the 10th day of April, 1903, filed its

report, whereby it assessed the damages of defendant at $8,120. This sum was immediately deposited by the plaintiff with the clerk of the circuit court of Dunklin county, and thereupon plaintiff entered into possession of the premises and, in pursuance of the order and judgment of this court and the report of the commissioners, expended a very large sum of money. In due time defendants filed their exceptions to the commissioners' report and, before the trial, filed what they termed an amended answer, in which substantially the same grounds are urged as in the original answer and as shown by the exceptions to the commissioners' report. Upon trial of the issues presented, the jury returned into court a verdict in favor of defendant for the sum of $10,000. A judgment of condemnation was entered accordingly, and plaintiff immediately deposited a further sum of $1,880 with the clerk of the circuit court of Dunklin county, making a total of $10,000, and in addition thereto paid all the costs which had accrued in said cause up to and including that transaction. The defendants, on behalf of the Cape Girardeau and Thebes Bridge Terminal Company, immediately filed a motion in the circuit court of Dunklin county, asking an order directing the sum of money so deposited with the clerk to be paid over to it, which motion was granted and the order entered of record. From the judgment of condemnation thus entered this appeal is now prosecuted on behalf of the defendants to this court, in which it is sought to review not only the proceedings of the court on the last trial in the assessment of damages, but the entire proceedings from the inception to the close of the case.

This plaintiff contends now that if there ever was a Federal question involved in this case it was involved as much in the former appeal as it is now, and the defendants having failed to take any steps to have these questions reviewed by a Federal tribunal cannot now do so, because all of the matters and things therein con-

tained are *res adjudicata,* and under no circumstances can be re-opened in the same case. Plaintiff further contends that the only questions open to review on this appeal are those raised on the trial in the circuit court on the question of damages, as all the other questions involved were adjudicated on the former appeal.

There was much testimony adduced on the question of values, as bearing on the amount of damages to which defendants were entitled on account of the condemnation of their property.

At the instance of plaintiff, and over the objection and exception of defendants, the court instructed the jury as follows:

"The court instructs the jury that on the 24th day of April, 1902, at 10:40 o'clock a. m., the Southern Illinois and Missouri Bridge Company, as plaintiff, filed in the circuit court of Scott county, Missouri, its petition against R. G. Stone, Nannie Finley and R. M. Finley, her husband, as owners, and Birgehardt Miller, Perry Bates and David Heldt, as occupying tenants, seeking to condemn for public use in connection with its bridge a strip of ground 200 feet wide and about 4,500 feet long, then owned by the said R. G. Stone, Nannie E. Finley and R. M. Finley, her husband, more particularly described as follows: A part of the S. E. and S. W. parts of private survey No. 794 in township thirty, range fourteen east; and in lot 2, of the N. E. 1-4 of sec. 2, township 29, range 14 east; being a tract of land 200 feet wide, one hundred feet on each side of the center line of the approaches to the bridge of the Southern Illinois and Missouri Bridge Company as located and platted, beginning at a point on the east line of fractional section 24, township thirty, range 14 east; and 1,240 feet from the S. E. corner of said fractional section; thence runs south 70 degrees 45 min. east, 765 feet; thence by one degree curve to the right, 980.4 feet; thence south 59 degrees, 45 min. east, 925.8 feet; thence by a 2 degree and 30 minutes curve to the left, 1,289.8

feet; thence north 87 degrees 51 minutes east, to the west bank of the Mississippi River; said center line intersects the north line of township 29, 100 1-2 feet west of the N. W. cor. of lot 2, in the N. E. 1-4 of section 2, township 29, range 14 east, and also intersects the west line of said lot 269.1 feet south of the N. W. corner of said lot 2, containing 20.3 acres.

"2.   The court further instructs you that the plaintiff Bridge Company has the right under the law to take and appropriate said strip of ground upon paying to said defendant owners R. G. Stone, Nannie E. Finley and R. M. Finley, her husband, just compensation therefor, and that the only matter for the jury to determine in this cause is the just compensation to be paid by said company to said defendants.

"3.   This just compensation, or in other words, the damages to which defendants are entitled, is the difference in the fair market value of defendants' whole property before and after the appropriation by plaintiff of the strip of land above described in view of the uses to which said strip condemned was to be thereafter applied.

"4.   The market value of the property means its actual value, independent of the location of plaintiff's bridge and approaches thereon; that is, the fair value of the property as between one who wants to purchase and one who wants to sell it; not what it could be obtained for in peculiar circumstances when greater than its fair price could be obtained, not its speculative value; not the value obtained through the necessities of another. Nor, on the other hand, is it to be limited to that price which the property would bring when forced off at auction under the hammer. The question is if the defendants wanted to sell their property, what could be obtained for it upon the market from parties who wanted to buy and would give its full value?

"5.   The market value is not to be determined by the value of the strip in question to the plaintiff Bridge

Company or the plaintiff's necessity of acquiring it. This consideration must in no way be allowed to affect the determination by the jury of the value of either the whole property or of the strip sought to be appropriated by the plaintiff Bridge Company in this proceeding.

"6. The jury will consider the benefits, if any, and the disadvantages if any, resulting to the remainder of defendant's said property from the appropriation by plaintiff Bridge Company, of the strip of land in question for the purpose of its bridge and approaches. The benefits to be considered and allowed by the jury are the direct and peculiar benefits, if any, which result to the remainder of defendants' said property and not the general benefits which defendants derive in common with the other land-owners in the vicinity from the building of the bridge and its approaches."

At the request of defendants, the court further instructed the jury as follows:

"Gentlemen of the Jury:

"It is your duty to assess the damages which you may believe from the evidence defendants will sustain on account of the appropriation by the plaintiff of the land involved herein.

"And in assessing said damages you will be governed by the following rules, viz:

"You will consider the quantity and value of the land to be taken and the damages to the whole tract by reason of the construction of the plaintiff's bridge and approach.

"Value, as used in these instructions, means market value, but you are further instructed that the market value is not what it will sell for at forced sale, but it is the highest price it will bring in the hands of a prudent seller in view of all the uses and purposes for which the land is adapted; and if you believe from the evidence that said land is located so as to be eligible as a site for a bridge across the Mississippi river or so

as to be adapted for use as a terminal railway, or other valuable use, then in making your estimate of its value you should consider all such advantages and capabilities of said land, together with whatever superiorities in these respects, if any, over other lands in the vicinity.

"2. The court instructs the jury that, under the testimony in this cause, the date of the assessment of the damages by the commissioners will be taken as the date of the appropriation by plaintiff of the land sought to be condemned herein. And whatever sum you may find the property taken by the plaintiff at that time to be worth, according to the rules of fixing damages, as mentioned in these instructions, will be the amount of said damages, whatever it may be, and should be returned by your verdict.

"3. The court instructs the jury that the consideration shown by the deeds offered in evidence, either for plaintiff or defendants, is not binding on either of said parties, but only circumstances to be considered in connections with the other testimony offered in this cause, by the jury in arriving at its verdict, and you are also instructed that the considerations in said deeds may be explained by testimony which you will also consider in your verdict, provided any such testimony of explanation was offered."

It is claimed by defendants that the petition is fatally defective in that it fails to allege that the land sought to be condemned is to be acquired for public use. But the sufficiency of the petition and all other questions presented by the record on this appeal, up to the time of the decision of the court on the former appeal, were passed upon in the opinion then delivered, and have become *res adjudicata*. On the former appeal, the judgment was reversed and the cause remanded with specific directions, as before stated, and under such circumstances the mandate must be strictly pursued, all matters included therein being *res adjudicata*, and cannot be reopened. [Stump v. Hornback,

109 Mo. 272; Hurck v. Erskine, 50 Mo. 116; Shroyer v. Nickell, 67 Mo. 589; Chouteau v. Allen, 74 Mo. 59; State ex rel. v. Givan, 75 Mo. 517; State ex rel. v. Edwards, 144 Mo. 467; Carey v. West, 165 Mo. 452; Baker v. Railroad, 147 Mo. 140; Overall v. Ellis, 38 Mo. 209; Chapman v. Railroad, 146 Mo. 481; Rees v. McDaniel, 131 Mo. 681; Tourville v. Railroad, 148 Mo. 614; Riley v. Sherwood, 155 Mo. 37.]

In the case of Metropolitan Bank v. Taylor, 62 Mo. 338, it is said: "When the case of Roberts v. Cooper, 20 How. 467, was before the Supreme Court of the United States the second time, after it had been tried in the circuit court on the principles established by the Supreme Court in the first trial, it was decided that the court could not be compelled, on a second writ of error in the same case, to review their decision on the first; that after a case had been brought there and decided, and a mandate issued to the court below, if a second writ of error was sued out, it brought up for review nothing but the proceedings subsequent to the mandate; that none of the questions which were before the court on the first writ of error could be reheard or examined upon the second, and to allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute in the first, would lead to endless litigation; for there would be no end to a suit if every litigant could by repeated appeals compel a court to listen to criticisms on their opinions, or speculate on chances from changes in its members."

There are several errors assigned by defendants which are claimed to have occurred after the judgment was reversed and the cause remanded to be proceeded with as directed by this court. The first of these is as to the appointing, in vacation, commissioners to assess the damages, when the mandate of this court directed the lower court to appoint commissioners. The contention is that when directions are given by a court to do an act, which under the express terms of the law

may be done either by the "court," or by "the judge in vacation," such directions are distinct orders for the court to act, and bar action by the judge thereof; that where the law, or the order of a higher court, requires action by a circuit court, such action cannot properly be taken by the judge in vacation. This objection seems to us to be without merit, and for the following reasons: In the first place, the statute (sec. 1266, R. S. 1899), authorizes the circuit court, or judge thereof in vacation, to appoint such commissioners, and we do not think the mandate, while it directed the court to appoint the commissioners, had the effect of prohibiting the judge from so doing; and his appointment of them was a substantial compliance with the mandate and an exercise of the power conferred upon him by statute.    In the next place, upon exceptions filed by defendants to the report of the commissioners, the case was tried before a jury who found that defendants' property had been damaged in the sum of ten thousand dollars, for which sum, and costs of suit, judgment was thereafter rendered in their favor against the plaintiff.  So that defendants have no right whatever to complain of the manner in which the commissioners were appointed.

Under the facts disclosed by the record, we do not think the Cape Girardeau and Thebes Terminal Railroad a necessary party to this litigation; hence no error was committed in refusing it to become a party defendant.

It is said for defendants that the trial court committed error in permitting the plaintiff to introduce and read in evidence the official document and record reciting the fact of the appointment of commissioners and their award of damages in the sum of $8,120.    But this seems to be a misapprehension of the facts disclosed by the record, which shows that when Mr. Miller, attorney for plaintiff, offered in evidence the order made on the 24th of March, 1903, appointing commissioners to assess the damages to the defendants, R. G.

Stone, R. M. Finley and Mrs. Finley, an objection was interposed by counsel for defendants to the effect that the order was void upon the ground that the court was without authority to make it, and that it was irrelevant, immaterial and incompetent, and did not tend to prove any issue in the case. The objection was overruled, and defendants saved exception. The notice to the attorney for defendants of the purpose of plaintiff to make application to Judge Fort, at the time and place therein named, for the appointment of commissioners to assess the damages, if any, growing out of the appropriation of the land in the petition described, the order appointing them, their report, together with the amount of damages fixed by the report, were all admitted in evidence without objection. The objection interposed went no further than to the order appointing commissioners to assess the damages, and it follows that there was no foundation for this contention.

Defendants assert that there was no evidence that plaintiff endeavored to agree with them or either of them as to the price to be paid for said property, and intimate that there was no averment in the petition as to a failure to agree upon the price or compensation to be paid therefor, and that, therefore, the court was without jurisdiction of the case. The petition alleges that the ''petitioner has endeavored to agree with defendants and each of them upon the price to pay for said property, but has been unable to amicably settle or to agree at all upon a proper compensation to either of the parties defendant.'' That the court had jurisdiction of the parties and the subject-matter of the controversy clearly appears from the record, and even were it true that there was no evidence in support of this allegation such fact would not oust the court of its jurisdiction. Nor was it necessary for plaintiff ''to sustain this averment of the petition by oral testimony'' (Cory v. Railroad, 100 Mo. 282); but that might be done by facts and circumstances, of which there was an abund-

ance in this case to show that no efforts, however strenuous, upon the part of the plaintiff, would have resulted in such agreement.

The sixth instruction given for plaintiff is criticised upon the ground that it permitted a reduction of the compensation to defendants for the taking of their land by "benefits" supposed to be conferred on the remainder of defendants' "property" by the bridge approaches. This question has been adjudicated adversely to defendants' contention upon several different occasions, as will appear from the decisions of this court to be noted. In Combs v. Smith, 78 Mo. 32, it is held that the benefits for which a railroad company are entitled to be allowed in establishing the damages sustained by a land-owner by reason of the appropriation of his land for the road, are such as the land derives from the location of the road through it, and are not enjoyed by other lands in the same neighborhood. [Newby v. Platte County, 25 Mo. 258; Railroad v. Richardson, 45 Mo. 466; Railroad v. Stock Yards, 120 Mo. 541; Railroad v. Knapp, Stout & Co., 160 Mo. 396.] And the benefits peculiar to that portion of the property which is not taken, and which are not common to the public at large, may be set off against the damages assessed for the appropriating of the property. This rule was not changed by the Constitution of 1875. [Daugherty v. Brown, 91 Mo. 26; Kansas City v. Morton, 117 Mo. 446; Lingo v. Burford, 112 Mo. 149; Bennett v. Hall, 184 Mo. 407.]

While we recognize the right, as well as the duty, of this court to change its former ruling in the same case in order to correct or render harmless any error therein, it will only do so when it becomes satisfied that error was committed, or for some reason more cogent than is presented by the record in this case. The former opinion was well considered, as was every phase of the case then presented by the record. It is, we think, in no way erroneous, and should not, therefore, be dis-

turbed. The act of Congress authorizing the construction of the bridge was passed January 26, 1901, and provides that the construction thereof should be commenced within one year, and completed within three years, after the passage of the act, and if not completed within that time, the act should become null and void and all the rights conferred thereby cease and determine. The presumption will be indulged that it was completed within the time specified, and that plaintiff, relying upon the former decision of this court, expended a vast amount of money in the construction of said bridge and approaches, which, in the event said decision were overruled, could but result in great injury to plaintiff and other investors who acted upon the faith of that decision. We might, therefore, predicate our declination to overrule that decision upon the doctrine of *stare decisis,* but do not invoke that doctrine; nor do we think it at all necessary to the conclusion which we have reached, which is that the judgment should be affirmed. It is so ordered. *Marshall, Gantt, Fox* and *Lamm, JJ.,* concur; *Brace, C. J.,* and *Valliant, J.,* dissent upon the ground expressed in the dissenting opinion in the former appeal.