J. C. ABRAMS, Appellant, v. E. A. SINN et al., Appellees.

**APPEAL AND ERROR:** Effect of Transfer—Jurisdiction to Enter
1  Alternative Judgment. The taking of an appeal *without the filing
   of a supersedeas bond* does not deprive the trial court of jurisdiction
   to enter an alternative judgment provided for in the judgment
   entry from which appeal is taken.

**DAMAGES:** Pleadings—Excessive Allowance. Damages may not ex-
2  ceed the amount asked in the pleadings.

**VENDOR AND PURCHASER:** Action for Breach—"Value" Defined.
3  Damages for failure to convey real estate will not be measured
   either by the peak or the bottom price of a speculative and fluctu-
   ating market, but rather by the fair value of the property, as be-
   tween one who wants to purchase and one who wants to sell.

*Appeal from Story District Court.*—E. M. McCALL, Judge.

APRIL 4, 1922.

ACTION in equity, to rescind contract for sale of land. Cross-petition for specific performance. Decree for defendants, and plaintiff appeals.—*Modified and affirmed.*

C. G. *Lee,* for appellant.

J. Y. *Luke,* for appellees.

WEAVER, J.—I. On July 10, 1919, the plaintiff and wife entered into a written contract with the defendant E. A. Sinn, by the terms of which plaintiff undertook to sell to said defendant a certain farm in Story County, Iowa, for the sum of $53,600, to be paid as follows: $1,500 on the execution of the writing, $25,100 on March 1, 1920, and the further sum of $27,000 in 10 years from March 1, 1920, with annual interest at 5 per cent, secured by mortgage on the property. Conveyance was to be made March 1, 1920. Later, on July 19, 1920, plaintiff, claiming to have been defrauded in the transaction, served written notice of rescission of sale upon Sinn, and tendered to him a return of the check given him for the down payment of $1,500. Thereafter, on August 4, 1919, plaintiff instituted this action to rescind and cancel the contract, naming as defendant the said E. A. Sinn, together with S. B. Lee, Ollie Briley, and John Hill. Stated as briefly as practicable, the alleged ground for such relief is that, in said deal, the defendant Lee undertook to act as the plaintiff's agent, and to protect and care for the plaintiff's interests therein, and plaintiff relied upon him for that purpose; but that said Lee, in violation of his duty to plaintiff, was in fact acting in the interest of Sinn, and did by his misrepresentations and untrue statements deceive and mislead the plaintiff into selling the land for materially less than it was worth, and did aid and abet the defendant Sinn in obtaining an unconscionable advantage over the plaintiff. The petition also charges that Lee was, in fact, secretly interested as a principal or associate with Sinn in said purchase. The defendants Sinn and Briley answer, admitting the making of the contract sought to be rescinded, and deny all charges of fraud. By cross-petition, Sinn alleges that, on March 1, 1920, he was ready, able, and willing to complete the purchase of the land on

the agreed terms, and has ever since been and still is ready to perform, on his part. He also alleges, as a ground for the recovery of damages, that, after making such purchase, he entered into contract with his codefendant Hill to sell the land to him at $390 per acre, but that, by reason of the action taken by plaintiff, he was compelled to release Hill from his agreement, and thereby lost the profit .on such sale, amounting to $8,800. The defendant Lee does not answer.

After hearing the evidence offered, the trial court found for the defendants, and sustained the cross-action by Sinn for specific performance, and ordered that plaintiff and wife should, within 30 days, and upon a tender of performance by Sinn, convey the land to him by warranty deed. It was further ordered that plaintiff should transfer, assign, and deliver to Sinn the rental of the property for the year 1920, and that performance on the part of Sinn should consist of tendering to plaintiff his promissory note, due March 1, 1930, for $27,000, bearing 5 per cent interest, payable annually from date of tender, with optional payments of $1,000 or multiple thereof on any interest day, and also a first mortgage on the property, to secure such payment. Said Sinn was also required to tender in payment the sum of $25,100 in cash, together with the further sum of $1,500, if plaintiff should surrender the check given him for that sum. It was still further ordered and adjudged that, if plaintiffs neglect and refuse to make the conveyance of the land and assignment of the rental for the year 1920, as ordered in the decree, ''there shall be entered at the next term of said court a judgment against plaintiffs for the difference between $335 per acre for the land in controversy and the value or price of $400 per acre, or the aggregate sum of $10,400,'' in favor of the defendant Sinn. The foregoing decree was entered of record on August 19, 1920, and plaintiffs perfected an appeal therefrom on September 20, 1920. On the same day, the defendants filed a motion for judgment against plaintiff for the recovery of $10,400, pursuant to the provision embodied in the decree directing the same in the event of plaintiff's failure to perform the contract to convey the land. This motion was sustained and, the judgment demanded having been entered, plaintiffs have also appealed therefrom.

We have omitted to state that, after this action was begun, a supplemental petition was filed by the plaintiff against the defendant Lee, repeating the charges of fraud by said defendant and his alleged breach of faith toward the plaintiff, and asking that, in the event Sinn recovers judgment for damages upon his cross-petition, the plaintiffs should have their remedy over therefor against Lee. No issue was taken upon this pleading, and by order of the court in its entry of judgment, the matter was continued.

While there is much in the record justifying a suspicion that the defendants together organized a "drive" by which to "rush" the plaintiff and secure the purchase of his farm at a price which, in the piping times of the Iowa land boom of 1919, would insure them a handsome profit, there is lack of definiteness in the evidence of such fraud or undue advantage as would justify the court in ordering a rescission of the contract; and without extending our opinion for a discussion of the facts, we think it must be said that the trial court did not err in holding that specific performance might be enforced; although, had the appellee not waived such performance by electing to take judgment for damages, we should feel compelled to modify the terms thereof in several respects.

II.   The effect of the decree as entered was to give the appellee the right to elect to take a judgment for damages for the difference between the contract price of the 160 acres of land at $335 per acre, and the value or price of such property at $400 per acre, in lieu of performance, if, at the end of 30 days, appellant failed to make the required conveyance.   While plaintiff had appealed from the decree immediately before the entry of the alternative judgment for damages, no supersedeas appears to have been ordered or bond therefor furnished, and the trial court did not lose jurisdiction to enter such judgment.

1. Appeal and error: effect of transfer: jurisdiction to enter alternative judgment.

III.   We are impressed with conviction, however, that the judgment for damages is to a material degree excessive.   It seems to have been computed on the basis of an actual value of $400 per acre for plaintiff's farm, or aggregate price of $64,000, and the contract price of $335 per acre, amounting to $53,600, and recovery

2. Damages: pleadings: excessive allowance.

was allowed for the difference, $10,400. Now, the only damages demanded by the appellee in his cross-petition were such as he claimed to have sustained by reason of the loss of profit on the alleged sale to Hill at $390 per acre, or an aggregate of $8,800. Summing up his claim in the language of his own pleading, the appellee says he "had a profit of $55 per acre in the land, and has been damaged in such amount by the wrongful acts of the plaintiff." No other item or claim of damage is pleaded. The judgment rendered is, in effect, an allowance for loss of profit at the rate of $65 per acre, or $10 per acre in excess of the appellee's claim.

IV. Even if we were at liberty to disregard the limit of damages as fixed by the pleadings, we are of the opinion that the estimate of the land at $400 per acre is a manifest over-3. VENDOR AND PURCHASER: action for breach: "value" defined. valuation. It may be, and doubtless is, true, as counsel for appellee says, that the spring and early summer of 1919 witnessed a sudden and extraordinary "boom" in Iowa land sales, and a remarkable temporary advance in the prices at which farm lands were held or sold. It was swift in its development, temporary in duration, and scarcely less swift in its decline. Now, while the worth or value of property is, in one sense of the word, what price it will command on the market, it is a reasonable and equitable proposition that, where damages are sought to be recovered for failure to convey land, its value it not conclusively established by reference to the peak prices or bottom prices of an abnormal, feverish, and fluctuating speculative market, but is rather "the fair value of the property, as between one who wants to purchase and one who wants to sell it; not what it could be obtained for in peculiar circumstances, when greater than its fair price could be obtained; not its speculative value; not the value obtained through the necessities of another. Nor, on the other hand, is it to be limited to that price which the property would bring when forced off at auction under the hammer." *Southern Illinois & M. Bridge Co. v. Stone,* 194 Mo. 175 (92 S. W. 475); *Madisonville H. & E. R. Co. v. Ross,* 126 Ky. 138.

"Real value" is defined by the Kentucky court as the market value at a sale "under ordinary, normal conditions, unaffected by any combination of producers or dealers whose object

is to create an abnormal condition in that market.'' *Commonwealth v. International Harv. Co.,* 131 Ky. 551 (115 S. W. 703). In California, it is held that market value is synonymous with actual cash value. *City of Los Angeles v. Western Union Oil Co.,* 161 Cal. 204 (118 Pac. 720).

In *State v. Parsons,* 109 Mo. App. 432, 440 (84 S. W. 1019), market value is said to be actual money value, and ''is established when other property of the same kind has been the subject of purchase or sale to so great an extent, and in so many instances, that the value becomes fixed.'' To the same purport is *Sloan v. Baird,* 162 N. Y. 327 (56 N. E. 752). Actual value has been frequently defined as the fair and reasonable cash price for which the property can be sold in the market. *Birmingham Fire Ins. Co. v. Pulver,* 126 Ill. 329 (18 N. E. 804). In *Tedens v. Sanitary District,* 149 Ill. 87 (36 N. E. 1033), the same court sustained an instruction to the jury that, in fixing the value of property, they were not ''to consider the price that property would sell for under special or extraordinary circumstances, but its fair cash market value, if sold in the market under ordinary circumstances.''

There is in this case but very slight evidence of the actual value of the property in question, as defined by the authorities. It is true that some witnesses appear to estimate the value at $400 per acre. Appellee himself put a value of but $390 per acre, in his alleged sale to Hill. The defendant Briley, in a conversation with a witness on July 19th, placed upon it a value of $380 per acre. Lee testifies that, at the time this contract was entered into, there had been no sales as high as $400 of lands so far from town as this was. On July 2d, Hill had bought a farm immediately adjoining the plaintiff's for $325 an acre, and on about the same day, he sold it for $366 per acre; and a short time before, he had sold another in the same neighborhood for $325 an acre. Briley testifies that it was his opinion, when Sinn went to Waterloo to buy the farm, that it ought to be bought under $350 an acre. There was testimony also of sales of other lands, at greater or less distance, for $400 or more per acre. Of the alleged sale by Sinn to Hill, we think it may be said that it was merely colorable, and not a sale in fact. The plaintiff had served a notice on Sinn and Lee of his rescission

of the contract now in suit, and in the nighttime of the same day, Sinn, Briley, Lee, and Hill met in Lee's office, where and when the alleged sale to Hill was made, but afterwards abandoned. There was, indeed, no "market," in the usual meaning of that term, while the short-lived boom prevailed. It was a wild scramble. Prices had little relation to actual or cash values. It made little difference what price was demanded for a farm; for, if only the owner was willing to take a comparatively trifling down payment, and carry the bulk of the debt secured by mortgage over a long series of years, some eager speculator was ready to take it, and immediately set out to find some other hopeful investor, to take the bargain off his hands at a profit. The deal in this case was of typical boom variety. On a purchase price of $53,600, the down payment was less than 3 per cent; but it was sufficient to tie the property up, without another dollar's investment, for nearly a year, in which the purchasers could get out from under the load at the expense of someone else. Of all the sales mentioned, none is noted as having been for cash. None of these things necessarily affect the legal validity of the transaction, but they do have material bearing upon the assessment of damages which defendant is entitled to recover for plaintiff's refusal to perform. That is to be measured by the difference between the fair and reasonable value of the property at the date of the contract and the contract price. Considering the entire record, we reach the conclusion that the fair value of the farm did not exceed $375 per acre, and that, on this basis, the judgment rendered against plaintiff should be modified by reducing the recovery from $10,400 to $6,400; and as thus modified, it is—*Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.