## URCIOLO v. SACHS.

### No. 692.

Municipal Court of Appeals for the
District of Columbia.

Nov. 18, 1948.

Joseph A. Sommer, of Washington, D. C. (Leonard C. Collins, of Washington, D. C., on the brief), for appellant.

Leonard S. Melrod, of Washington, D. C. (Lubar, O'Keefe, Friedlander & Melrod, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This was an action for damages for breach of a contract to convey real property. Sachs contracted to buy the property from DeMarco and in turn contracted to sell to Thomas who assigned his contract to Urciolo. DeMarco did not convey to Sachs and consequently Sachs could not convey to Urciolo. This action was brought by Urciolo against Sachs.

Thomas had made a $500 deposit with Sachs and Urciolo paid Thomas $600, representing the deposit plus $100 profit to Thomas. In addition Urciolo paid out $16 in title examination fees. The trial court awarded Urciolo judgment for $616. Urciolo appeals from the judgment on the ground that it is inadequate in that he was awarded no damages for loss of his bargain. The trial court refused to award such damages, holding that there was no adequate proof of a difference between the purchase price and the market value at date of the breach of contract. Appellant argues that the record discloses adequate proof.

The record shows that early in 1946 Curto contracted to buy the property for $7,500; that Urciolo purchased Curto's rights in the contract for $200, making a total purchase price to Urciolo of $7,700; that in August 1946 Urciolo sold to Thomas for $8,300 and in October Thomas sold to DeMarco for $8,400; that later in the same year DeMarco sold to Sachs for an undisclosed amount; that in January 1947 Sachs contracted to sell to Thomas for $6,900, this being the contract here involved; that Thomas immediately assigned his rights to Urciolo for $100, making a total price to Urciolo of $7,000; that in the same month Urciolo contracted to sell to Felton for $7,750; that DeMarco, who did not convey to Sachs under his contract, in November 1947 sold to Whiting for $9,750.

Appellant says these sales before and after the sale in question show at the

time Urciolo contracted to buy from Sachs the market value was substantially greater than the sale price. In our opinion the trial court was not compelled to accept any of these transactions as evidencing true market value. Obviously some, if not all, were of a speculative nature. For the most part they were made between business associates. Urciolo and Thomas had been dealing together in real estate for many years. Urciolo, when he first bought the property, sold it to Thomas. Thomas, after selling, rebought it and sold to Urciolo. Urciolo then sold to one of his own salesmen. As far as the record shows comparatively little cash passed in any of the transactions. For example, in the final sale by DeMarco the sale price of $9,750 included only $500 cash. "It is usually said that market value is what a willing buyer would pay in cash to a willing seller." United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336, 147 A.L.R. 55. Speculative value is not market value. Abrams v. Sinn, 193 Iowa 528, 187 N.W. 491; Louisville & N. R. Co. v. R. E. E. De Montluzin Co., 166 La. 211, 116 So. 854; Palmer v. Penobscot Lumbering Ass'n., 90 Me. 193, 38 A. 108; State ex rel. State Highway Commission v. Farmer's Estate, Mo. App., 68 S.W.2d 721.

In the contract in question Sachs agreed to sell to Thomas for $6,900. Thomas, who Urciolo testified was "one of Washington's best appraisers," immediately sold his rights to Urciolo for $100. The trial court could reasonably conclude that Thomas did not sell below market price or at least that the sale price to Urciolo was so close to market value that the difference, if any, was negligible.

■ To establish market value appellant relied not only on the sales but also on expert testimony. The experts were himself and Thomas. Of course, appellant's testimony was subject to close scrutiny because of self-interest; and, in view of the long and close association between appellant and Thomas, the latter could not well be considered completely disinterested. Appellant testified that the property had a market value of from $8,950 to $9,750 but opposed to this was the fact that he sold

to Felton for $7,750. Thomas said the market value was $8,300, but he sold to Urciolo for $7,000. Rarely is expert testimony as to value binding on the trier of the facts and it is never binding when inconsistent with other evidence in the case. See Murray v. United States, 76 U.S.App. D.C. 179, 130 F.2d 442. Cf. Branson v. Reichelderfer, 62 App.D.C. 129, 65 F.2d 280.

■ The evidence of other sales and the opinion evidence of the experts was not so overwhelming as to establish as a matter of law that Urciolo bought the property for less than its market value. The evidence presented a question of fact for the trial court whose finding must be sustained.

Affirmed.