## THE UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE

*vs.*

## THE MAYOR AND CITY COUNCIL OF BALTIMORE.*

*Constitutional law*: section 48 of Article 3; amending or repealing charters of corporations; limitations of power. United Railways of Baltimore City: paving between tracks; special assessment for repaving; illegal—where no special benefit.

The amendment to the State Constitution now known as section 48 of Article 3, to alter, repeal or amend the charters of corporations, does not confer unlimited power upon the State; it was not intended to deprive the citizen of his property contrary to the law of the land, or to take private property for public use without just compensation.          p. 673

To charge the United Railways of Baltimore City for the repaving of the streets, between and for two feet on each side of its tracks, when its charter provisions require it merely to keep such parts of streets in repair, is an illegal act, and can not be sustained under the amending power reserved in the Constitution, or any other power under the laws of Maryland.   p. 674

The assessing of such special assessment upon the street railway is an attempted exercise of the taxing power for a public work which conferred no special benefit upon the corporation.
.          p. 672

Every special assessment for public improvements, where there are no special benefits conferred, is wrong, and if consummated is nothing more than the confiscation of private property for public use without compensation.          pp. 670-671

*Decided February 10th, 1916.*

---

*An application was made by the appellee, in this case, to the Supreme Court of the United States for a writ of *certiorari.* The writ was denied May 8th, 1916.

Appeal from the Superior Court of Baltimore City. (So-PER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph C. France* and *Sylvan Hayes Lauchheimer,* for the appellant.

*S. S. Field, the City Solicitor,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This is the defendant's appeal from a judgment for twenty-two thousand, four hundred and forty-nine dollars and fifty-six cents entered against it in the Superior Court of Baltimore City. The suit was brought under the Act of 1914, Chapter 37, to recover from the defendant the amount paid by the Mayor and City Council of Baltimore for paving, as shown upon the account filed with the declaration, the area between and for two feet on each side of the defendant's tracks on Baltimore street, from Fremont to Liberty streets, in Baltimore City.

There is no question of pleading involved, and it is admitted that the account is correct and shows the sum paid by the City for doing the work. The single question in the case is one of law. The case was tried in the Court below without the intervention of a jury, and that Court, treating the question as one arising under the Federal Constitution, held that the Act did not violate the provisions of that Constitution, and, resting its judgment principally upon the case of *Fair Haven and Westville Railroad Co.* v. *City of New Haven,* 203 U. S. 379 (51 Law Ed.), held the defendant liable.

In the briefs of the parties the Federal question is exhaustively and ably discussed and many decisions from the Supreme Court of the United States and elsewhere are cited

in support of the conflicting contentions. After the most careful consideration of the case we do not find it necessary to pass upon the Federal question suggested in the briefs, but we rest the decision solely upon the Constitution and decisions of our Court. In order that the basis and extent of the decision may be clearly understood, and that the real issue before the Court be not overladened and obscured by a mass of adjudications from other jurisdictions, based either upon dissimilar facts or upon principles of law which do not obtain in this State, it is necessary to state the controlling facts disclosed by the record and the single question which it presents.

By Ordinance No. 44, approved March 28, 1859, William H. Travers and certain associates were empowered to construct a passenger railway on Baltimore and other streets in Baltimore City. Section 9 of the Ordinance provided: "That if the aforesaid parties, their associates, successors or assigns, shall hereafter become incorporated, the rights and privileges granted to them by virtue of this ordinance shall extend to such corporation upon the conditions herein prescribed, and until such acts of incorporation shall have been obtained, such association shall have all the rights and privileges hereby granted, or the successors of said parties; without further action of the Mayor and City Council of Baltimore." It was provided by section 11 of the Ordinance, "that the owners and proprietors of said railways shall keep the streets covered by said tracks, and extending two feet on the outer limits of either side of said tracks in thorough repair, at their own expense, and shall free the same from snow or other obstructions, in doing which they shall not cause to be obstructed the other portions of the street on either side of the railway tracks authorized by this Ordinance to be constructed, and for non-compliance, the Mayor and City Council may impose such reasonable fines, not exceeding twenty dollars per square, to be collected as other city fines are now col-

lected." The Ordinance contained other provisions which have no controlling effect in this case.

William H. Travers and his associates assigned all the rights, powers and privileges granted under the Ordinance to Henry Tyson and others, and by the Act of 1862, Chapter 71, Henry Tyson and others were incorporated by the name and style of the Baltimore City Passenger Railway Company. The corporation thus created was vested with all the rights, powers and privileges granted by the above-mentioned Ordinance to William H. Travers and others, "to be by said corporation held, enforced and exercised in manner and form and upon the terms and conditions, and subject to the restrictions and limitations contained in the Ordinance." It was further provided that upon the acceptance of the Act by Tyson and his associates, "all railways, railway cars, horses, and other property of every description, real, personal and mixed, acquired and held by them for the purposes mentioned in and to carry out the provisions of the aforesaid Ordinance shall be and they are hereby vested in said corporation." Section 12 expressly reserved to the General Assembly "the power at all times to repeal, alter, or amend this charter." As to this section it may be said it reserved no new power to the General Assembly. It was merely a declaration or reservation of a power already vested in it by the Constitution of 1851 (Article 3, section 47).

The United Railways and Electric Company, the defendant in this action, was formed in 1899, and by a certificate of consolidation and the Act of 1900, Chapter 319, all the rights and powers, duties and obligations, existing at the time of the consolidation, granted and imposed by law or ordinance to and upon the Baltimore City Passenger Railway Company were vested in and assumed by the defendant. It was under an obligation imposed by the Ordinance of 1859 to keep the streets covered by its tracks and extending two feet on the outer limits of either side of said tracks in thorough repair, at its own expense. Its charter was subject

to the reserve power to repeal, alter, or amend contained in the Act of 1862, Chapter 71, and to the provisions of section 48, Article 3 of the Constitution of 1867, as follows: "All charters granted or adopted in pursuance of this section, and all charters heretofore granted and created subject to repeal and modification, may be altered from time to time, or repealed."

By Ordinance No. 9, approved December 9, 1897, the duty of paving and repairing the railway area was imposed upon street railway companies where rights or privileges were *thereafter* granted to such companies to use or occupy the streets of Baltimore. All grants which have been made to the defendant company since its formation have been made subject to the paving and repairing obligations imposed by the Ordinance of 1897, and subject also to the payment of the park tax and other charges fixed by the Board of Estimates under the City Charter. As to this Ordinance and the charges fixed by the Board of Estimates no question is raised in this case. The obligations to pave and repair where tracks have been laid under that Ordinance have been assumed by the defendant, and it has paid the park tax since its formation,—a sum amounting to more than six million, seven hundred thousand dollars—all franchise charges, and general taxes and other costs, aggregating large sums, in adapting and adjusting its tracks to paving operations.

The Act of 1906, Chapter 401, created a Paving Commission for Baltimore City, and by the amendment thereto made by the Act of 1908, Chapter 202, broad powers as to the paving and repairing the city streets with new and improved street material were conferred upon the commission, and in order to provide the money for doing the work to be done by the commission the Mayor and City Council was authorized to issue the stock of the corporation to an amount not exceeding five million dollars. This loan was approved by the voters of Baltimore in 1911. The Commission was organized and began the work of paving the streets of the City.

The second section of the Act of 1908, Chapter 202, authorized the Commission at its election to assess the cost of the paving, etc., "in whole or in part, upon the property binding upon such public lanes, avenues, streets or highways, according to such mode of procedure as shall be prescribed by the Mayor and City Council of Baltimore by ordinance or ordinances." The prior Act (1906) imposed one-third of the costs upon the City and two-thirds upon the abutting property owners, and by section 8 of that Act it was provided: "That the Mayor and City Council of Baltimore be and it is hereby likewise authorized to impose upon all street railway companies occupying with their tracks parts of the beds of streets, avenues, or other highways in the City of Baltimore upon which work shall be done under this Act of the obligation to pay for said work so far as the same shall be done between the rails of their said tracks, and for a space of two feet on either side thereof, and the Mayor and City Council of Baltimore is further authorized to enforce said obligation by all such appropriate agencies, means, processes, proceedings and remedies as it may ordain for that purpose; but nothing in this Act shall be taken as in anywise relieving any such company or any other corporation or person from any obligation in its or his relations to the public highways of the City of Baltimore now cast upon it or him by law."

A suit was brought by the City under section 8, quoted above, of the Act of 1906, to recover the costs incurred by it for paving the track area of the defendant's road on Linden avenue between Dolphin street and North avenue, and a judgment was entered in favor of the City. Upon appeal, this Court reversed the judgment without awarding a new trial, holding: First, that the obligation to repair imposed by the Ordinance of 1859 did not include the obligation to *repave;* and, secondly, that the Act did not apply to those street railway companies upon which the obligation to repair only existed; *United Railways & Electric Company* v. *Mayor and City Council,* 121 Md. 552.

In the course of the opinion in that case, JUDGE CONSTABLE, speaking for the Court, said: "From the conclusion we have reached, we have not found it necessary to consider any of the questions raised other than whether the Acts of 1906, Chapter 401, and 1908, Chapter 202, and the titles thereto are comprehensive enough to carry with them a modification of the charter provisions of the appellant. And, therefore, we are not expressing any opinion as to whether or not it was in the power of the Legislature to impose the duty upon the appellant of repaving the track area in addition to that of repairing previously imposed."

That case was decided in October, 1913, and at the ensuing session of the General Assembly the Act of 1914, Chapter 37, approved March 10, 1914, upon which this suit was brought, was passed. The declaration alleged that subsequent to the passage of the Act of 1914, Chapter 37, "the Paving Commission of Baltimore City gave to the United Railways and Electric Company the notices required by said Act to be given proir to the beginning of the work hereinafter mentioned, and the said defendant declined to do any of the work within the railway area, and thereafter the said Paving Commission proceeded to repave with improved paving, Baltimore street, including the railway area from Fremont avenue to Liberty street, being upon a portion of the franchise originally granted to the Baltimore City Passenger Railway Company by the Act of 1862, and the Paving Commission incurred for paving in the railway area, on behalf of the Mayor and City Council of Baltimore, and the Mayor and City Council of Baltimore have paid an expense for the paving in the railway area, amounting to twenty-one thousand, four hundred and fifty-five dollars and forty-four cents ($21,455.44), as per statement hereto attached, and said Paving Commission used in said railway area no more expensive material than was in their judgment reasonably necessary.

"That said work was completed on September 9, 1914, and said bill for said twenty-one thousand, four hundred and fif-

ty-five dollars and forty-four cents ($21,455.44) was duly
presented to and demand for payment made of the defend-
ant, and payment thereof was refused, and the plaintiff fur-
ther says that the defendant has refused to pay any portion
of the obligation imposed upon it by said Act of 1914, Chap-
ter 37, wherefore there is due and payable by said defendant
to the plaintiff the said sum of twenty-one thousand, four
hundred and fifty-five dollars and forty-four cents ($21,-
455.44), with interest thereon from September 9, 1914."

At the trial below it was agreed "that the plaintiff paved
Baltimore street from Fremont avenue to Liberty street, in-
cluding the space in the railway area, for which this suit is
brought; that all of said work was done by the Paving Com-
mission pursuant to the Act of 1914, Chapter 37; and that,
in reference to said work, the Paving Commission complied
with the requirements of said Act, and said paving consisted
of asphalt and scoria block (between tracks) in place of the
belgian block for the whole width of the street; and that no
more expensive material or construction was used in the rail-
way area than was, in the judgment of the Paving Commis-
sion, reasonably necessary for the proper construction of
the paving of the entire street."

The Act of 1914, Chapter 37, will now be examined.   It
is entitled "An Act in pursuance of the power of taxation
and of the police power, and the general power of the Legis-
lature over public highways, and in the exercise of the re-
served power to alter or repeal the charter of all corpora-
tions incorporated since the Constitution of 1850; imposing
upon every corporation occupying with railroad or street
railway tracks any portion of any public highway of Balti-
more City, the obligation to pay the cost or expense of pav-
ing or repaving the portion of such highway lying within
the track or tracks and for a distance of two feet outside of
each outer rail of said track or tracks, whenever the said
highway shall be paved or repaved with improved paving
by the Paving Commission of Baltimore City, the State
Roads Commission, the Annex Improvement Commission,

the City Engineer, or any other public commission, board or
agency." Then follows some, recitals which are not of con-
trolling importance. Section 1 imposes "upon every corpora-
tion occupying with railroad or street railway track or tracks
any portion of any public highway in Baltimore City which
shall hereafter be paved or repaved with improved paving
by the Paving Commission of Baltimore City, the State
Roads Commission, the City Engineer, the Annex Improve-
ment Commission, or any other public commission, board or
agency, the obligation to pay for the cost of such paving with-
in the space covered by any such railroad or railway track
or tracks and for a distance of two feet outside of each outer
rail of such track or tracks. The cost of the paving, as here-
in used, shall be construed to include the cost of the removal
of the old cobble or other paving, and all excavation, ballast-
ing, grading, concreting and other work involved in such
paving. This obligation shall apply whether the entire street
be paved with the same kind of improved paving or whether
one kind be put outside of the railway area and a different
kind within the railway area, provided no more expensive
material or construction be used in the railway area than is
reasonably necessary, in the judgment of the Paving Com-
mission or other agency doing such paving, for the proper
construction of the paving of the entire street. * * * The ob-
ligation hereby imposed shall be a lien upon the property,
of such corporation to the same extent as ordinary taxes
against the property of such corporation, and may be en-
forced and collected by the same remedies used for the en-
forcement and collection of taxes, and payment thereof may
be enforced by the Mayor and City Council of Baltimore
by a suit at law or by any other remedy provided by any
law or ordinance, and appropriate for said purpose. All said
remedies shall be cumulative. The city, through its Paving
Commission or other commission, board or agency doing such
paving, may pay the cost of the paving in the railway or rail-
road area in the first instance, and in that event the said
cost when paid by the railway or railroad corporation shall

be credited to the fund from which the cost of said paving shall have been paid in the first instance; and the amount of the cost shall be due and payable for the work done in the railway area in any street or portion of a street embraced in each separate contract or separate undertaking of construction by said Paving Commission or other agency, upon the completion of such work. Provided that no corporation shall be required to pay under or by virtue of the provisions of this Act more than $100,000 during any one year. If the cost of the work for which any corporation is made liable under this Act shall exceed $100,000 in any one year, the excess above $100,000 shall not be due and payable until the following year; the intent of this proviso being that the entire obligation imposed by this Act shall be paid by every corporation upon which it is imposed, but that no corporation shall be called on to pay more than $100,000 thereof in any one year."

It is clear, not only from the language of the Act, but from the other legislation relating to the subject, that it was passed for the purpose of imposing upon the defendant company and others similarly situated a portion of the burden incurred in the repaving of the city streets. The charge laid upon this defendant is limited to $100,000 in any one year. The charge imposed is essentially a tax or a special assessment levied upon the property of the corporation for a local improvement, viz, the improvement of the streets of the City,—and it is imposed because the Company has property in the zone where the improvements are made. To call the thing imposed an obligation does not change its essential character and attributes as a tax or a special assessment. It is a *lien* upon the defendant's property "to the same extent as *ordinary taxes.*" The burden imposed upon the defendant falls clearly within the definition of a special assessment as defined by text writers and adjudged cases.

In *Gould* v. *Baltimore,* 59 Md. 378, it was said: "The right to make such assessments is undoubtedly an exercise of the taxing power, but an assessment thus made differs from

a general tax levied for state and city purposes.   The latter is a tax imposed on all persons within the territorial limits according to the value of their property, in consideration of the protection which the Government affords alike to all.   A local assessment, on the other hand, is a tax levied occasionally as may be required upon a limited class of persons interested in local improvement, and who are presumed to be benefited by the improvement over and above the ordinary benefit which the community in general derive from the expenditure of the money.   In the payment of the assessment thus made, the adjacent owner is supposed to be compensated by the enhanced value of his property arising from the improvement.   And hence, it has been uniformly held that the word taxes, whether used in an Act of the Legislature, or the charter of a company exempting it from taxation, does not embrace such local assessments, unless there be something in the statute or charter to indicate such an intention."

The only principle upon which taxes of this kind can be supported is thus stated in section 236 of *Hamilton on the Law of Special Assessments*: "No benefit, no tax, is the rule, tersely expressed.   An able text writer lays down the general rule that special taxation for a local improvement, as well as special assessments of benefits for the same, necessarily proceeds upon the theory of benefits to the property upon which it is levied, and that a burden imposed upon any other theory is a mere arbitrary exaction; a taking of private property for public use without just compensation. JUDGE DILLON says: 'Special benefits to the property assessed, that is, benefits received by it in addition to those received by the community at large, is the true and only just foundation upon which local assessments can rest; and to the extent of special benefits it is everywhere admitted that the Legislature may authorize local taxes or assessments to be made.' JUDGE COOLEY writes that 'there can be no justification for any proceeding which charges the land with an assessment greater than the benefits; it is a plain case of ap-

propriating private property to public uses without compensation,' and that 'a clear case of abuse of legislative authority, in imposing the burdens of a public improvement on persons or property not specially benefited, would be undoubtedly treated as an excess of power and void.' "

This is the Maryland doctrine upon the subject; *Baltimore City* v. *Moore,* 6 Harris & Johnson, 375; *Baltimore City* v. *Howard,* 6 Harris & Johnson, 383; *Baltimore City* v. *Hughes,* 1 Gill & Johnson, 480; *Baltimore City* v. *Scharf,* 54 Md. 499.

JUDGE ALVEY, in his dissenting opinion in *Baltimore* v. *Johns Hopkins Hospital,* 56 Md. 1, announced the doctrine which has always obtained in this State upon the subject of special assessments as follows: "The principles and rights of these special assessments are just in themselves when properly applied. It is only, however, when the property assessed receives from the improvement benefits in addition to those received by the community at large that the principle can properly apply. This, says JUDGE DILLON, as the result of all the authorities, is the true and only solid foundation upon which local assessments can rest. 2 *Mun. Corp.* sec. 761. And this is the precise ground upon which it is said by this Court that they can be supported and none other; *Alexander* v. *Baltimore,* 5 Gill, 383. The same principle is fully affirmed in *Burns* v. *Baltimore,* 48 Md. 203. The special benefit, therefore, is the essential condition of the assessment. Without it, there is no power to make the assessment; and any attempt to enforce an assessment where there is no special benefit conferred is a wrong, and, if consummated, is nothing more nor less than the confiscation of private property for public use, without compensation."

This case overruled the case of *Baltimore* v. *Scharf,* 54 Md. 499, but the principle stated by JUDGE ALVEY is in harmony with the decisions in both cases upon this subject. The *Hopkins Hospital case* was followed in *Moale* v. *Baltimore,* 61 Md. 224, and in *Alberger* v. *Baltimore,* 64 Md. 1; but was overruled upon the constitutional question involved in

*Ulman* v. *Baltimore,* 72 Md. 587, in which the Court said: "We must return to the doctrine laid down in *Scharf's case,* 54 Md. 499," and referred to the dissenting opinion of JUDGE ALVEY in support of its conclusion.

It results from the principle stated that there can be no recovery in this case unless the defendant is specially benefited by the improvement, because the assessment laid upon it was illegal and void.

That the defendant was not specially benefited was distinctly decided in *Scharf's Case.* In that case it was contended that The Baltimore City Passenger Railway Company —the predecessor of the defendant—should be charged for a part of the cost of paving a portion of Baltimore street between Harrison and Greene streets. Its liability was urged upon two grounds: First, its repair obligation under the Ordinance of 1859; and, secondly, its liability to a special assessment for doing the work. It was contended "that the roadbed, etc., of a street railway company is liable to such assessments for local improvements." In disposing of these contentions, the Court said: "The questions raised by the appellees that the City could not order this repaving to be done at the charge of the appellees because the charter of the City Passenger Railway Company imposed the duty on that corporation of keeping the track of the road and for two feet on each side of it in thorough repair; or if it could, it could not do so legally without assessing it with a part of the costs,—are not necessary to the decision of the case as it stands; but as it may prevent further litigation on that score we may properly dispose of the questions. There can be no doubt that the rails, roadbed and other property of that corporation are subject to taxation for municipal purposes; but it does not follow that it must contribute specially to street improvement such as this is. Their estate is such as would not be 'enhanced in value by the projected work. The only ground on which assessments, on the owners of land on each side of the road for such improvements, has ever been justified, is on the theory that such property owners are specially

benefited and the land itself enhanced in value by the improvements." It is to be remembered that this was said at a time when the amending power reserved by the constitution of 1867 was in full effect. The conclusion reached on this point appears to be based upon experience and sound sense. How can it possibly be held or successfully contended that a railway company can be specially benefited over and above the other inhabitants or travelers on the streets by improved pavements? If an assessment upon a street railway can be sustained upon the ground of special benefits to the company resulting from new and improved pavements, such an assessment may be sustained against the owners of automobiles and other conveyances using the streets; the burden laid upon the defendant was done in the attempted exercise of the taxing power for a public work which conferred no special benefit upon the defendant, and cannot be sustained under the law of this State.

"In the absence of any such benefit," said the Court in *City of Alleghany* v. *Western Penn. R. R. Co.,* 138 Pa. St. 375, "in a case where we can declare as a matter of law no such benefit can arise, the Legislature is powerless to impose such a burden. It would not be a 'tax' in any proper sense of the term; it would be in the nature of a forced loan, and would practically amount to confiscation." The imposition of this burden cannot be sustained under the reserved power to amend. That power is not unlimited, and was never intended to confer upon the General Assembly the power to deprive the citizen of his property contrary to the law of the land, or to take private property for public use without just compensation. It must be given a construction which will harmonize and preserve the general constitutional restraints upon legislation in regard to private property. Many things have been done under this power, as appears by the cases cited in the briefs, but we are not called upon in this case to fix the limits of this power. It is better to confine ourselves to the precise question before the Court.

What we decide is that the charge imposed upon the defendant, and for which this suit is brought, is illegal, and cannot be sustained under the amending power or under any other power known to the law of this State. Where the law of a particular jurisdiction holds the estate of a railway company in the bed of a street subject to an assessment, or where the company has assented in fact, or by legal construction to such a burden, no doubt it can be imposed. The *New Haven Case* cited above is one in which both of these necessary conditions existed and the obligation to pay was properly imposed.

The defendant is not claiming an exemption from taxation. It was under no obligation under its charter or otherwise to pay any part of the costs for paving the portion of the street mentioned in the declaration. All of its property is taxed, and it contributes in general taxes to the costs of public improvements and the general welfare of the city, large sums of money. It is resisting what it contends to be an unlawful and illegal exaction laid upon it by the Act of 1914, Chapter 37.

It follows from what we have said, that the Legislature had no power under the Constitution and laws of this State to charge the defendant with the cost of doing the work sued for in this case, and shown by the account filed with the declaration. The judgment must, therefore, be reversed, without awarding a new trial.

> *Judgment reversed without awarding a new trial, the costs to be paid by the appellee.*