The Consolidated Gas Electric Light and Power Company of Baltimore is the owner of a tract of land, containing several acres, located on the city water front and partly occupied by an extensive plant which is used in the production and distribution of electrical current. A portion of this tract is required for the opening of a new thoroughfare known as McComas street, for which the Mayor and City Council of Baltimore have provided by ordinance. The Commissioners for Opening Streets made an award of damages from which the corporate owner appealed to the Baltimore City Court. The trial on that appeal resulted in a verdict charging the company with net benefits of $5,835.00 over and above the amount of the damages. That result is the occasion of a further appeal, which brings to this Court for review a ruling of the trial Court upon a question of evidence, and its action in granting certain instructions to the jury.
By Section 176A of the Baltimore City Code, as enacted by Chapter 125 of the Acts of 1914, it is provided: "In any case where a part of a lot, or part of a lot and improvements is taken for opening, widening, extending, straightening or closing a public highway, the Commissioners for Opening Streets in making their award, and in the event of an appeal, *Page 23 
the Court or jury in making its or their award, shall not award damages and assess benefits separately, but shall ascertain and find separately: First — the present value of the entire lot, or the entire lot and improvements of which a part is to be taken, as if the proposed opening, widening, extending, straightening or closing were not to be made; and secondly — what will be the value of the portion of the lot, or of the lot and improvements which will remain after the opening, widening, extending, straightening or closing shall have been made, and the grading thereof shall have been done. If the value so found of the whole, exceeds the value so found of the portion which will remain, the owner of said lot, or of said lot and improvements shall be allowed the difference as net damages. If the value so found of the part which will remain shall exceed the value so found of the whole, then the owner of the said lot, or said lot and improvements shall be charged the difference as net benefits, * * *."
At the trial in the Baltimore City Court the witnesses on both sides agreed in valuing the appellant's entire tract of land before the opening of the street, at $90,000, independently of buildings and other improvements worth $225,000. The estimate thus placed on the land was at the rate of twenty cents per square foot for the total of 450,000 square feet which the tract contained. The part of the land to be taken for the street has an area of 26,600 square feet, and, on the basis of valuation just mentioned, is worth $5,320. According to the testimony on behalf of the appellant, no benefit or increase of value would accrue to the property as a whole from the opening of the street, and its value would consequently be reduced to the extent of the amount estimated for the part condemned. The witnesses for the City, on the other hand, testified that the opening of the street would increase the value of the remaining land to $96,590, as compared with the previous valuation of $90,000 for the entire tract. Upon this theory the appellant would be chargeable for net benefits to the amount of $6,590. An allowance, however, was to be *Page 24 
made to the appellant for the cost of removing a water tower from the ground required for the street, and it was agreed that $755 was a proper estimate for this expense. The effect of such allowance was to reduce the net benefit claimed by the City to $5,835, which was the amount awarded by the verdict.
The appellant company offered in evidence a lease under which it acquired the land and electrical plant in question, with a distribution system and franchise, from the Baltimore Electric Company on November 20, 1907, for the term of nine hundred and ninety-nine years. It was the object of this proffer to show, from the provisions of the lease, that the use of the property was limited to the special purposes of the particular industry then in operation on the leased premises, and that the land was therefore not susceptible to the benefits which might otherwise result from the opening of the proposed street. The lease was excluded by the trial Court upon the ground that the object of the offer was legally inadequate, and that the interest conveyed by the lease was for all practical purposes a fee simple estate. This ruling is the subject of the first exception.
It appears from the terms of the lease that no rent was reserved for the demised property and that the consideration for the transfer was the payment of the nominal sum of five dollars and the covenant of the lessee to pay the principal and interest of a bond issue of $7,500,000 secured by mortgage of the property and franchise of the lessor company executed by it prior to the lease, and in further consideration of the lessee's covenant to pay semi-annual dividends, at the rate of five per cent. annually, to the holders of the preferred stock of the lessor company issued to the par value of $1,250,000, and also to pay all taxes, assessments and public dues of all kinds levied against the leased property. There was a covenant that the lessee would maintain the premises in good order and condition, and make all necessary repairs, and at the expiration of the term surrender the property in the same condition as at the beginning, "ordinary wear and *Page 25 
tear excepted." The lessee company further obligated itself to perform the contracts of the lessor company for the supply of electrical current to various consumers.
The lease to which we have thus referred undoubtedly assumed that the demised plant and premises would continue to be used for the purposes of an electric light plant, but such user was not prescribed as an absolute and permanent obligation. There is no expression of a purpose to bind the lessee to the maintenance and operation of an electrical plant on the leased land during the whole term of nine hundred and ninety-nine years for which it was conveyed. The performance of the covenants for the payment of the bonds and dividends on the preferred stock, and for the fulfilment of the existing contracts of the lessor, does not necessarily involve the exclusive and perpetual appropriation of the ground to its present use. In view of the practically unlimited duration of the leasehold estate, the covenant to keep the property in repair and to surrender it in good condition at the end of the term, except for ordinary wear and tear, can only be regarded as a nominal provision without reasonable possibility of performance and without any effect as a continuing limitation upon the uses to which the property may rightfully be applied. But if it be assumed that the land can have no other use than as a site for an electric light plant, it may nevertheless have a market value which the opening of the new street will enhance. The Court below was clearly correct in its ruling that for the purposes of a condemnation proceeding this nine hundred and ninety-nine year leasehold interest is equivalent to a fee simple title, and that the lease does not tend, and hence is not admissible, to show that the property is not capable of being enhanced in value by the opening of the new thoroughfare.
The land of the appellant, through which the street is being opened, appears to be well adapted to the purposes for which it is now used, but that is not shown to be the only use for which it is available. There is nothing to suggest *Page 26 
that it differs in any respect, as to its general utility, from other land similarly located. If there had been express limitations imposed, by agreement of the lessor and lessee, upon the use of the property, the question as to the extent of the benefit it receives from the opening of the street would not be thereby affected. The assessment of street benefits is a proceeding in rem. It involves a charge upon the property itself on account of an increase in its value resulting from the improvement which the proceeding has in view. The payment of the ascertained amount of the benefits is enforceable by a sale of the property assessed. Baltimore City Code, sec. 182. If there is in fact an enhancement of the market value of the land, in consequence of the street being opened, it is clear that the property could not be exempted from assessment for such a benefit merely because of a limitation upon its use imposed by the lease. As this Court said in Zion Church v. Baltimore, 71 Md. 527: "It will be observed that the assessment is made on the property without any reference to the state of the title. The only inquiry is into the amount of benefit conferred on the property by the contemplated improvement. The person or persons in possession may have a limited interest, a qualified defeasible estate, or an absolute unquestionable fee simple. But the Commissioners cannot take these questions into consideration." Moreover, in this instance, the appellant covenanted in the lease to pay all taxes, assessments and public dues of every kind levied against the property demised.
The statutory rule for the ascertainment of net damages or benefits in such cases is simple and practical. If the market value of the remaining land is not increased at all by the improvement, then the owner is awarded the present value of the land taken by the condemnation. If the opening of the street will produce an increase of market value for the property not taken, the owner is awarded as net damages, or the City as net benefits, the difference between the augmented value of the residue and the prior value of the whole. Upon *Page 27 
the question as to the market value of the property before condemnation, the appellant was entitled to have all its elements of utility considered. The fact that the land was being used for a particular purpose would not preclude an inquiry as to its availability for other uses which would add to its value in the market. Baltimore v. Carroll, 128 Md. 73; Brack v.Baltimore, 125 Md. 378; Callaway v. Hubner, 99 Md. 529. No reason is apparent why a different principle should be applied to the co-incident ascertainment of benefits. It would be a very illogical rule which would require damages to be estimated with due regard to all the uses to which the land may be adapted, and would exclude from consideration all but its actual and present use for the purposes of the benefit assessment. The sole object of the inquiry, from either point of view, is to determine the comparative market values of the property before and after the appropriation of a part for the intended public use, and in ascertaining those values, with reference to either period, all the available uses of the land may properly be considered.
The question as to whether or not the appellant's property is benefited by the new street was treated by both parties in the trial below as a material issue of fact. Proof was offered by the appellant to show that no such benefit would result, while the city adduced evidence to the contrary. The case was submitted to the jury under an instruction, proposed by the appellant, that the jury should assess only such benefits, if any, as it may be fairly and reasonably apparent that the appellant's property will receive directly from the opening and grading of McComas street. Since the appellant company has thus affirmatively recognized the question of benefits as an issue which, under the evidence, should be decided by the jury, it is not in a position to maintain the contention that the property is incapable of being thus benefited. There was testimony to the effect that the new street will be of practical advantage to the property as at present used, by rendering it more accessible, the existing means of *Page 28 
approach being difficult. This was evidently the theory upon which the jury found as a fact that the street would benefit the land by increasing its market value to the extent indicated by the verdict. In view of this finding by the jury, after the issue had been submitted to them at the appellant's own instance, we would not be justified in holding that no such benefits could accrue.
The proffered lease of the property being inadmissible in evidence, for the reasons we have stated, it is unnecessary to determine the question, raised in argument, as to whether the appellant's title may be relieved of any leasehold limitations by virtue of the right of redemption conferred by Article 21, § 93 of the Code, under the conditions therein specified.
It is further urged that the appellant is a public service corporation, and that its land through which the new street is being opened is dedicated to the public purpose of supplying electric light to the people of the city, and hence is not marketable and susceptible to the enhancement of property value which the opening of a highway usually occasions. In support of this contention the appellant cites a number of cases in which railroad properties have been held not chargeable with assessments for local improvements. The decisions on that question are not in accord, but the prevailing doctrine appears to be that where a benefit to the railroad property is shown, the charge may be imposed. This is the view expressed in 4 Dillon onMunicipal Corporations, 5th Ed., Sec. 1451, and in notes toChicago, Milwaukee St. Paul R. Co. v. Milwaukee (Wis.), 28 L.R.A. 249; Heman Construction Co. v. Wabash R. Co. (Mo.), 12 L.R.A. (N.S.), 112; Georgia Railroad Banking Co. v. Decatur
(Ga.), 40 L.R.A. (N.S.), 935; Seattle v. Seattle Electric Co. (Wash.), 15 L.R.A. (N.S.), 487. In United R. E. Co. v.Baltimore, 127 Md. 660, it was held that the cost of new street paving in the area occupied by, and immediately adjacent to, a street railway could not be assessed against the *Page 29 
railway company, because it did not derive any special benefit from the repaving. It was solely on the ground of the absence of such a resulting benefit that the assessment was held to be invalid. The plain implication of the decision was that if a special benefit had accrued, the right to assess would have been sustained. This principle has been recognized in other Maryland cases. Baltimore v. Cahill, 126 Md. 601; Lauer v.Baltimore, 110 Md. 448; Hyattsville v. Smith, 105 Md. 318;Ulman v. Baltimore, 72 Md. 587; Baltimore v. Scharf,54 Md. 499; Baltimore v. Johns Hopkins Hospital, 56 Md. 1;Moale v. Baltimore, 61 Md. 224; Alberger v. Baltimore,64 Md. 1.
While there are some cases, in other jurisdictions, which exempt railroad property as such from assessment for local improvements, we have found no instance where such an exemption has been extended to land used for the purposes of an electric light plant or other industry of that general nature. There is no sound principle upon which such property should be thus exonerated. The fact that it is used as a site for a public service industry does not render it unmarketable. There is no legal necessity for its permanent retention and use for that purpose, and the appellant corporation may at any time lawfully move its plant from the present site to another location, if its interests and convenience so require, and the financial covenants of the lease are duly protected and observed. The land is legally and practically capable of being sold, and hence it has a market value which is susceptible of enhancement by causes naturally tending to have that effect. It is an ascertained fact in this case that such a result is being actually produced. The verdict of the jury, upon the concededly proper issue as to a possible increase of property value from the street opening, has definitely determined that the market value of the land is thereby materially increased. There being thus a special benefit, by way of increased market value, which the property is in reality deriving from the opening of the new thoroughfare, there is no *Page 30 
ground upon which the appellant can be relieved of the just and proportionate contribution which the assessment of benefits is intended to represent.
There were three instructions to the jury granted at the request of each of the parties. Those of the city described the method of ascertaining net damages or benefits as provided by the statute, emphasized the point that only market values were to be determined, and not values for a particular use, or the effect of the street opening upon the profits to be derived from the use of the property or from the business there being conducted, and defined market value as being the price which a purchaser, willing but not compelled to buy, would offer, and which a seller, willing but not compelled to sell, would accept. The first prayer was criticised for its statement that the jury should "ascertain only market values and not values for a particular use either to the property owner or to the city." While the available uses of the land may be taken into consideration as promoting its marketability, it is the market value alone which is to be ascertained by the verdict, and the instruction was not open to objection for laying down this statutory rule. Baltimore v. Carroll, 128 Md. 73; Brack v.Baltimore, 128 Md. 430; 125 Md. 378. The second prayer is said to be objectionable because it told the jury that they should consider only property values and not business profits in making their award. This direction was also in accord with the rule of valuation prescribed by the statute. The definition of market value in the form we have reproduced from the city's third prayer is a correct statement of the theory and basis upon which such values are to be estimated.
Rulings affirmed, with costs. *Page 31