The determination of the controversy here presented involves and is controlled by the proper construction of a *Page 134 
trust deed dated February 16th, 1918, under which the late Senator Clark of Montana transferred to the Commercial Trust Company of New Jersey, as trustee, thirty thousand (subsequently increased to thirty-six thousand) shares of stock of the United Verde Copper Company for the benefit of his then infant daughter, Huguette, one of the present complainants, who on May 23d 1929, assigned an undivided one-half interest to her rights thereunder to her mother, Anna E. Clark, the other complainant herein.
By the third paragraph of the trust deed, the settlor made provision for distribution of the principal of the trust as follows:
"The said Trustee shall make payment of the principal of said trust fund as follows: It shall pay or transfer to the said Huguette Marcelle Clark one-third of said principal if and when she shall attain the age of twenty-eight years, and shall continue to hold and invest the remaining two-thirds thereof until said Huguette Marcelle Clark shall attain the age of thirty-three years, if she shall live so long, when said Trustee shall pay to her one-third of the remainder of said principal then in its hands, and shall continue to hold the remainder of said principal until said Huguette Marcelle Clark shall attain the age of thirty-eight years, if she shall live so long, when it shall pay to her the remainder of said fund in its hands, both principal and interest."
Upon attaining the age of twenty-eight years, on June 9th, 1934, the cestui que trust, together with her mother as assignee, demanded of the trustee the payment and/or transfer to them of one-third of the principal of the trust estate, then consisting of thirty-six thousand shares of United Verde Copper Company stock (hereinafter referred to as United Verde stock) and other securities, the latter of which had a total market value of $239,513.37. Based upon its reading of paragraph six of the trust deed, the pertinent provisions of which are:
"Each of the distributions of the principal above provided for shall be made in kind as far as possible by the transfer of the appropriate number of securities authorized hereunder for investment of the trust fund held by the trustee at the time of such distribution or payment.
"In case the trust fund shall be invested at the time of the payment of said accumulated income or any portion thereof, or at the time *Page 135 
of making any of the distributions of principal, in securities or properties consisting partly of stock of the United Verde Copper Company and partly of other securities, all such payments shall be made first by the transfer of securities other than the stock of the United Verde Copper Company, or as far as may be, leaving the distribution of such United Verde Copper Company stock to the last. In order to determine the amount of the whole estate andthe amount of any distribution, the stocks, bonds or othersecurities shall be valued at their market value in case theyhave such market value. In case they have no market value, interest bearing bonds shall be so valued that the interest rate of the bonds shall be five per cent. on the valuation, and theshares of stock of the United Verde Copper Company and of anyother mining company shall be valued by multiplying by five theaverage annual earnings of said company during the period ofthirty-six months immediately preceding the time when suchpayment became due and payable, and dividing the result by thenumber of shares outstanding at the time of distribution."
The trustee declined to accede to their demand; assigning as reason therefor its inability to determine the value of the thirty-six thousand shares of United Verde stock then in its possession, because the copper company had made absolutely no earnings whatsoever during the thirty-six months preceding June 9th, 1934, by reason of its not having resumed, prior to the last mentioned date, the operations of its mine which it was forced to suspend when an extensive slide of rock occurred therein in March, 1931, thus precluding the application of the "five times rule" laid down by the above paragraph of the trust deed for the determination of the value of said stock.
Thereupon complainants filed their bill for a construction of the trust deed and the determination of the trustee's duties with respect to the payment and/or transfer to them of their one-third of the trust estate, joining as parties defendant with the trustee, Katherine Clark Morris and Mary Clark de Brabant, as surviving executrices under the last will and testament of the settlor, because of their contingent reversionary interest in thecorpus of the trust in the event of the cestui que trust's
decease, without issue, before attaining the age of thirty-eight years. On October 18th, 1934, and prior to final hearing, the trustee received $90,000 as a capital distribution upon said stock and on February 11th, 1935, sold said stock itself for $2,889,000, leave to set up which facts *Page 136 
by way of supplemental bill was sought by and granted to complainants, after which the matter came on for final hearing.
On the one hand it is contended by the defendant executrices that, the cestui que trust's right to a distribution of the Verde Copper stock, or its equivalent, being dependent upon the trustee's prior determination, in the manner prescribed by the sixth paragraph of the trust instrument, of the value of said stock on June 9th, 1934, and that said method of valuation having been rendered impossible by the then existing conditions, complainants should be limited to a mere distribution of the assets then comprising the trust estate other than and exclusive of the United Verde stock.
On the other hand it is insisted by complainants that they are entitled to one-third of the present corpus of the trust, consisting as it now does of $90,000 received by the trustee on October 18th, 1934, as a capital distribution upon the United Verde stock, $2,887,200 realized by it not from the sale of said stock on February 11th, 1935, and $239,513.57 which it holds in the form of securities — complainants basing their right to such distribution upon the asserted inapplicability to the present controversy of the provisions of the sixth paragraph of the trust instrument governing the manner of valuation and distribution of the United Verde stock, all of which provisions they contend are applicable if and when the trust fund be invested at the time of the making the actual distribution in United Verde stock and/or other securities.
But the limitation thus sought to be engrafted upon the applicability of those provisions is one that can only be evolved through a strained and artificial construction of the phrase "at the time of making distribution." A reading of the trust instrument clearly demonstrates that this phraseology, as regards the measure of the distribution, is unquestionably referable to the time when such distribution should have been, and not when it actually is, made. Were it otherwise, then the quantum of the distribution to be made would vary and fluctuate according to the causes and conditions which might intervene during the period of the trustee's delay in making it. That the settlor intended or contemplated *Page 137 
no such varying measure of distribution is clearly and forcefully manifested by the unequivocal language which he employed in the third paragraph of the trust instrument.
However, a reading of the entire trust instrument in the light of the circumstances attending its creation and execution precludes the approval or adoption by this court of either of the foregoing theories and methods of distribution advanced and urged by the respective parties. The aim of this court is and always should be, when construing a trust instrument, to ascertain and give effect to, if possible, the intent of the settlor.McCracken v. Gulick, 92 N.J. Eq. 214; Woods v. Woods,102 N.J. Eq. 502, 506; reversed, but not on application of this principle, by the court of errors and appeals in 105 N.J. Eq. 205.
Paragraph six of the trust deed expressly provides that, in determining the amount of the whole estate and of any distribution thereof, stocks, bonds or other securities shall be appraised at their market value; and in the event of there being no market value, then by the other standards of valuation therein specified. These provisions, particularly with respect to the evaluation of the United Verde stock, are not, as contended by complainants, of a mere procedural, incidental or subordinate character, nor can they readily be deleted from the trust instrument without impairing its completeness or rendering dubious the rights of the beneficiaries thereunder. They, on the contrary, are so closely related to and interwoven with the provisions of the third paragraph of the trust instrument, whereby the cestui que trust on June 9th, 1934, became vested with a right to one-third of the corpus of the trust, that an appropriate recognition of the established rules of construction requires that both of these paragraphs be read together and understood as being inter-dependent in their operation and effect.
While it is true, as claimed by the defendant executrices that the so-called "five times rule," laid down in the sixth paragraph of the trust instrument for evaluating the copper stock, has become impossible of application to the United Verde stock because of that company's failure to have had any earnings during the thirty-six months preceding June *Page 138 
9th, 1934, owing to conditions hereinabove referred to, nevertheless that fact is of no moment and entirely inconsequential in arriving at a proper determination of the present controversy, since that method of valuation was to be adopted and followed only if and when the United Verde and/or other copper stock had no market value, which, however, is not here the fact.
Complainants produced H. DeWitt Smith — a mining engineer of vast experience in the valuation of mining securities, who was the superintendent of the United Verde Copper Company's mine from 1917 to 1924, and its chief engineer from 1927 to 1930, and who thereafter re-examined the said mine for the purpose of placing a value upon it — who testified that United Verde stock could readily have been sold on June 9th, 1934, for at least $45 a share.
His testimony was fully corroborated and substantiated by that of Henry Krumb, who was a mining engineer of considerable experience in appraising mining securities, a member of the United Verde Copper Company's board of directors and operating committee since 1932, and a person entirely familiar with that company's mine, its other assets and liabilities. Another of complainant's witnesses, Charles Sands, testified that he was the secretary and treasurer of the United Verde Extension Mining Company, which in June, 1934, actually purchased four thousand shares of United Verde stock for $220,000 cash, or at the rate of $55 per share. In addition to the foregoing, there is the undisputed fact that the trustee on February 11th, 1935, actually sold the entire thirty-six thousand shares of United Verde stock for $2,889,000 or at the rate of $80.25 per share.
Despite all of the foregoing, counsel for the defendant executrices contend that there is no proof of the market value of the United Verde stock as of June 9th, 1934. But that is not so. Generally speaking "market value" has been held to mean: the price for which an article is bought and sold, as is best established by sales in the ordinary course of business (Stoll
v. Almon C. Judd Co., 106 Conn. 551; 138 Atl. Rep. 479; Sanford
v. Pack, 63 Conn. 486; 27 Atl. Rep. 1057; Chany v. Hotchkiss,79 Conn. 104; 63 Atl. Rep. 947); the *Page 139 
price fixed by buyer and seller in an open market in the usual and ordinary course of lawful trade and competition (Lovejoy v.Michels, 88 Mich. 15; 49 N.W. Rep. 901; 13 L.R.A. 770); the price or value of property as established or shown by sales; public or private, in the ordinary conduct of business (Murray
v. Stanton, 99 Mass. 345); the fair value of property as between a desirous, but not compelled, purchaser and a desirous, but not compelled, seller (Palmer v. Penobscot LumberingAssociation, 90 Me. 193; 38 Atl. Rep. 108; Chase v. City ofPortland, 86 Me. 367; 29 Atl. Rep. 1104; Welty v. Taylor,63 Ind. App. 674; 115 N.E. Rep. 257; City of Chicago v. Farwell,286 Ill. 415; 121 N.E. Rep. 795; Consolidated Gas, c., Co. v.Mayor, c., of Baltimore, 130 Md. 20; 99 Atl. Rep. 968); the actual price at which a commodity is commonly sold. Douglas v.Merceles, 25 N.J. Eq. 144.
Nor does complainant's failure to have shown actual sales of United Verde stock on or before June 9th, 1934, preclude this court from finding its market value as of that date. Where, as here, there is proof of actual sales of United Verde stock about or shortly after June 9th, 1934, recourse may be had thereto in establishing the market value of said stock on said date. In determining the market value of stock of the Riverside Land Improvement Company, as of November 1st, 1867, although no sales thereof had been shown on or before said date, Chancellor Runyon, in Douglas v. Merceles, supra, significantly said:
"The market price of a commodity is the actual price at which it is commonly sold. That price may be fixed by sales in market at or about the time. If no sales can be shown on the precise day, recourse may be had to sales before or after the day, and for that inquiry a reasonable range in point of time is allowable. Dana v. Fiedler, 12 N.Y. 40; Beach v. Raritan andDelaware Bay Railroad Co., 37 N.Y. 457. There had been no sales before this date. There were none at that time: but there were some after it. It appears that, from the 1st of November, 1867, until December. 1870. the value of the stock in the market did not materially fluctuate. There is, therefore, no injustice to the complainant in taking the market prices between those dates as a criterion." *Page 140 
Even if the determination of the value of the United Verde stock as of June 9th, 1934, on either the "market value" or "five times rule" basis, as prescribed by the sixth paragraph of the trust instrument, were impossible, nevertheless this court would be constrained to direct a distribution on the basis of the actual value of that stock on the day in question; thereby giving effect to the manifest intent of the settlor and the settled rule of law whereby the actual value of a commodity, in the absence of an existing market value, is recognized as being its value.Douglas v. Merceles, supra.
If distribution here had to be made on the basis of the actual value of United Verde stock on June 9th, 1934, ample proof of such value may readily be found in the testimony of Mr. Smith and the copper company's own balance sheets, dated June 30th, 1934, reflecting its assets and liabilities.
However, I am fully satisfied from the evidence adduced that the market value on June 9th, 1934, of United Verde stock, which between June, 1934, and February 11th, 1935, had been sold from $55 to $80.25 per share, was at least $55 per share. Consequently, distribution should have been made according to the following computations:
36,000 shares of United Verde stock at ....................... $1,980,000.00
Other securities than trust fund on June 9, 1934, and
 valued at ................................................... 239,513.37
 _____________
Total corpus of trust as of June 9, 1934 ..................... $2,219,513.37
Amount of one-third of corpus of trust as of June 9,
 1934 ........................................................ 739,837.79
Value of other securities to be transferred in specie ........ 239,513.37
 _____________
Balance of one-third of corpus of trust payable in cash, $500,324.42

As indicated by the foregoing computations, complainants are entitled to a transfer in specie of all the securities specified in paragraph eight of the bill of complaint filed herein and in addition thereto to a payment of $500,324.42 in cash.
There will be a decree accordingly. *Page 141